The People of the State of Illinois, Plaintiff-Appellee,
v. Paul Ferris, Defendant-Appellant.

**Gen. No. 11,171.**

Second District, First Division.
August 8, 1958.
Rehearing denied August 30, 1958.
Released for publication August 30, 1958.

Ross & O'Keefe, of Chicago, and Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan (Richard F. Babcock, Lewis D. Clarke, and R. Marlin Smith, of counsel) for defendant-appellant.

Thomas J. Moran, State's Attorney (Kenneth R. Shorts, Assistant State's Attorney, of counsel) for plaintiff-appellee.

JUSTICE McNEAL delivered the opinion of the court.

On August 22, 1956, the State's Attorney of Lake County filed an information in the county court of that county, charging that on July 27, 1956, the defendant, Paul Ferris, operated a "trailer coach park in an area zoned R–4 rather than in an area zoned B–3, in the Southeast quarter of Section 13, Township 46 North, Range 9, East of the 3rd P. M.," contrary to the Lake County zoning ordinance and contrary to the statute. (Sec. 7 County Zoning Act, Par. 152 o, Ch. 34, Ill. Rev.

Stat. 1955.) Defendant entered a plea of not guilty and waived trial by jury. The court found the defendant guilty and sentenced him to pay a fine of $200 and costs, or to work out the same under the direction of the sheriff at the rate of $1.50 a day. Defendant appealed. The State's Attorney suggests that the matter should have been brought to this court by writ of error, but concedes that the issues of the case sufficiently appear upon the record presented, and requests the court to consider and decide the issues, as authorized by Supreme Court Rule 28.

The defendant operates a farm located in the southeast quarter of section 13 in Antioch Township, Lake County, Illinois. The waters of Lake Marie cover substantially all of the west half of section 13 and the west half of the northeast quarter of that section, and an arm or bay of the lake about 80 rods wide extends south about 60 rods about midway into the north half of the southeast quarter of the section. The remainder of the northwest quarter and approximately the north and the west 250 feet of the southwest quarter of the southeast quarter of the section have been subdivided. The Ferris farm consists of about 100 acres lying south and east of the subdivisions and south and east of the bay of Lake Marie. This appeal involves the use of a part of the Ferris farm, consisting of four or five acres, bounded on the north by Lake Marie bay, on the west by Merrywood Subdivision, on the south by a grove of trees, and on the east by Bowles road.

Defendant was born on the farm 65 years ago and has lived there ever since. In addition to farming, defendant has operated a summer camp, known as the Lake Marie Camp, on the four or five acre tract described, continuously since 1915. In that year defendant provided some boats and picnic tables at the camp ground. People came to the camp by horsedrawn vehicles and most of them used tents for shelter. By

348

1924 campers came by auto and brought trailers to the site, especially on weekends. They pitched their tents and parked their trailers any place they wanted to on the camp ground. Since 1932 defendant's daughter operated a refreshment stand at the camp. Near the farm buildings in the southeast corner of the farm, defendant maintained a gasoline pump along the road to the camp which was about a quarter of a mile away. He kept the camp site mowed, but never farmed any of the camp ground. Charges for use of the camp and facilities were: fifty cents a day or twenty dollars a season for each car, twenty-five cents a day for electricity when used, and twenty dollars a season for mooring power boats. About thirty rowboats were available for rental at a dollar a day. Defendant's wife kept the books of account for the camp. According to her records, total receipts for 1938 amounted to $2,450, and sales in 1939 amounted to $1,050.

In 1930 defendant installed a line of utility poles and furnished electricity at the camp. When the zoning ordinance was adopted on April 25, 1939, there were about 15 trailers parked along the electric line. During the summer of 193? there could have been 30 to 40 trailers at the camp at one time. Thereafter the number of trailers there at one time increased to 70 or 80, and defendant provided four more power lines to accommodate the increased number of trailers. The trailers were occupied on weekends and during vacation periods, but were not places of permanent habitation. Some owners left their unoccupied trailers on the premises during the summer camping season only, and others left them there during the winter months.

██ To be a valid exercise of power, a zoning restriction must have some rational connection with the promotion of public health, safety, morals or welfare (Regner v. County of McHenry, 9 Ill.2d 577, 582). Accordingly, the State's Attorney suggests that the Lake

County zoning ordinance was passed for the purpose of protecting the public health, safety, morals and general welfare, and argues that the minimum residential area requirements of the ordinance would permit the location of twenty-seven family plots on the tract, but that on the date the information was filed there were approximately "seventy-five individual family dwellings." We have carefully examined the evidence as abstracted and find no evidence that the permanent dwelling of any family was located on the tract, or that all of the seventy-five trailers were ever occupied at any one time. There is no evidence of any unhealthy, unsafe or immoral condition at the camp. It may be that some of the trailers were occupied by families over weekends or during vacation periods in the summer months, but there is no evidence as to the extent of such occupancy. The only evidence relative to this matter is the testimony of an inspector who said that on the date of the offense there were 25 to 35 people in the area and most of them seemed to be working on their trailers. This falls far short of showing any impairment of the public health, safety or morals in the area.

■ Defendant's theory is that he was operating a summer camp on the tract long before the adoption of the zoning ordinance; and that his use of the tract was not in violation of the ordinance, but was within its nonconformance provisions, as follows:

"Section 1—General. C. Non-conformance. Any building or structure, or the use of any building, structure, or tract of land, lawfully existing or under construction at the time of the adoption of this ordinance, or of a later amendment, but which does not conform with the requirements of this Ordinance, shall be known as non-conforming, and may remain, and the use then being made thereof may be continued. However, any enlargement, alteration, relocation, or change

in use of such building, structure, or tract of land, shall be in accordance with the provisions of Section 20.

"Section 20—Non-conformances. A. Expansion. A non-conforming use of a part of a building or structure may be extended throughout that part of the building or structure originally designed for such use. A non-conforming use of land shall not be extended beyond the area actually so used at the time of the passage of this Ordinance."

In his memorandum opinion the trial court found that the property in question consists of four or five acres and is located in a district zoned residential; on the date charged in the information the property was occupied by about seventy trailers, arranged in five lines and served by electric lines; on April 25, 1939, the date the zoning ordinance was adopted, the trailers were concentrated in one line and were about fifteen in number and serviced by an electric line installed prior to 1939. The trial court considered a number of decisions of courts of other jurisdictions, construed the words "area actually so used" in section 20 to limit defendant's nonconforming use to a single line of trailers as at the time of the adoption of the ordinance, and concluded that defendant violated the ordinance by adding four rows to the single line of trailers.

■ The facts as found by the trial court are sustained by the evidence. However, the decisions of courts of other jurisdictions are of doubtful persuasive value unless it can be shown that the courts construed identical zoning ordinances promulgated under the authority of identical statutes (People ex rel. Delgado v. Morris, 334 Ill. App. 557, 566), and we cannot agree with the trial court's application of the ordinance and law involved to the facts in this case, or with its construction of the words used in section 20 of the ordinance.

At the time of the adoption of the ordinance, the tract of land described was lawfully used as a camp ground, and such use did not conform with the requirements of the ordinance. Under such circumstances section 1 of the ordinance provides that such use should be known as nonconforming and that the use then being made of the tract might remain and be continued. After adoption of the ordinance, the tract was never altered, enlarged, expanded, extended or relocated, and in our opinion there was no change in the original nature and purpose of the undertaking, no change in the particular use of the tract of land, and no occasion to consider or construe section 20 of the ordinance.

■ ■ The trial court concluded that there had been a change in the use of the tract because the extent or volume of business conducted thereon had been increased by parking additional trailers beyond the "area" actually occupied by trailers at the time of the passage of the ordinance. The word "area" has an elastic meaning. Originally it meant a broad piece of level ground, but in modern use it can mean any plane surface or tract. 6 C. J. S. 332. In Illinois Cent. R. Co. v. Village of South Pekin, 374 Ill. 431, 434, the Court said: "The word 'area' is ordinarily used in referring to a particular extent or surface. Standing alone the word 'area' implies nothing as to size. It may be of large or small extent. . . . The word 'tract' . . . refers to a piece of land capable of being described with such definiteness that its location may be established and boundaries definitely ascertained." It is our opinion that the use of any tract of land lawfully existing at the time of the adoption of the ordinance was preserved by section 1; that the word "area" as used in section 20 is synonymous with "tract" and refers to "tract of land" mentioned in section 1; and that section 20, if applicable in this case, means that any such use shall not be extended beyond the tract then actually

so used. We think that sections 1 and 20 were intended to limit nonconforming uses of land to a tract actually used or to a use existing at the time of the passage of the ordinance, as distinguished from a tract held for some contemplated future use.

██ ██ No rights exist and no powers are conferred with respect to zoning except by statute (Park Ridge Fuel & Material Co. v. City of Park Ridge, 335 Ill. 509, 516). It follows that the provisions of the Lake County zoning ordinance must be construed in the light of statutory authority for adoption of the ordinance. Section 1 of the County Zoning Act (Par. 152i, Ch. 34, Ill. Rev. Stat. 1955) requires that in all ordinances passed under that Act "due allowance shall be made for existing conditions . . . and the uses to which property is devoted at the time of the enactment of any such ordinance," and prohibits the exercise of any power granted under that Act "so as to deprive the owner of any existing property of its use and maintenance for the purpose to which it is then lawfully devoted." In Village of Skokie v. Almendinger, 5 Ill.App.2d 522, similar provisions of the Cities and Villages Act were liberally construed so as not to deprive a person of a nonconforming use of a lot as a trailer park, although he had no title to the lot and such use was without the knowledge or consent of the owner. The court said that "the question of title is not of paramount importance." Section 1 of the Act protects a nonconforming use and maintenance of property for the purpose to which it was devoted at the time of the enactment of the ordinance, and indicates that the use and purpose to which a property was then devoted are of paramount importance. A liberal construction of the Act does not permit a limitation of such protection to a portion only of a property devoted to such use or to an area thereof actually so used.

353

In Federal Elec. Co., Inc. v. Zoning Board of Appeals of Village of Mount Prospect, 398 Ill. 142, the Supreme Court considered similar provisions of the Cities and Villages Zoning Act and the Mount Prospect zoning ordinance, and held that the erection of Zenith Radio signs on towers formerly used by WJAZ for radio transmissions was no change or expansion of use under nonconforming provisions of the ordinance. In Dube v. City of Chicago, 7 Ill.2d 313, 322, the Court recognized that a mere increase in volume of business is not an expansion of a nonconforming use. Where an ordinance contains no specific or implied restriction upon an extension in volume of a nonconforming use, this court has held that an owner is not precluded from converting a nonconforming two-family dwelling into a three-family dwelling, in a single-family zone. Village of Round Lake Park v. Dice, 6 Ill.App.2d 408. In People ex rel. Delgado v. Morris, 334 Ill. App. 557, 566, this court considered the nonconforming use provisions of an ordinance of the City of Highland Park, and said, "Similarly the alleged increase in intensity of use under the contemplated construction does not appear to violate the terms of the zoning ordinance. There is no provision therein against an increase in intensity of use . . . . Admittedly, one of the functions of zoning is to prohibit an undue concentration of people in a given area, nevertheless, merely because an area has been zoned does not justify a court in judicially legislating away the property rights granted to nonconforming property owners under the zoning law, in the absence of a specific restriction in the ordinance against any increase in intensity of use." No provision of the Lake County zoning ordinance specifically or by implication prohibits any increase in intensity or volume of use. Therefore, defendant's more intensive use of the tract described was not in violation of the ordinance.

In view of the foregoing, we conclude as a matter of law that defendant's use of the tract as shown by the evidence did not violate the provisions of the Lake County zoning ordinance or the County Zoning Act, and the judgment of the County Court of Lake County is therefore reversed.

Reversed.

DOVE, P. J. and SPIVEY, J., concur.