[Civ. No. 24925.   Second Dist., Div. Two.   Mar. 27, 1961.]

HOWARD HOMES, INC., Respondent, v. HENRY H. GUTTMAN et al., Appellants.

Zagon, Aaron & Schiff, Harold E. Aaron and Morris Lavine for Appellants.

George R. Pfeiffer, Arthur G. Bowman, Donald J. Burdine, Adelman & Schwartz and Milton M. Adelman for Respondent.

FOX, P. J.—This action involves a complaint for a declaratory judgment that plaintiff has the right to proceed with the construction of two single-family dwellings, in accordance with certain plans, on property adjoining the land of appellants. The latter, by cross-complaint, seek an injunction on the ground that the planned construction violates certain deed restrictions. The cross-complaint also seeks relief for alleged damage to appellants' sprinkler systems and sewer installations.

Appellants Henry and Katherine Guttman acquired certain properties by grant deed from Albert and Irma Rogell on July 3, 1947, designated Lots 1, 2, 3 and 4 of Tract 14531. This deed contained restrictive covenants including a prohibition against the erection of any fence, wall or hedge in excess of 5 feet above the level of the ground. These covenants were to run with the land. In October of 1954, the Guttmans sold Lots 2, 3 and 4 to cross-defendant Kahan by a deed restricting use of the property to the construction of no more than two one-story dwellings to front on Alpine Drive in Beverly Hills. The property so conveyed was resubdivided and is now designated, and will hereafter be referred to, as Lots 1 and 2 of Tract 23262. No other structure could be built except swimming pools, garages, and facilities incidental to swimming pools. The Guttmans retained Lot 1 of Tract 14531. The sale from appellants Guttman to Kahan was accomplished through escrow. The escrow instructions provided that existing restrictions (in the deed from Rogell to Guttman) which restrict building line setbacks and ''which conflict with the right of the purchaser to erect two single-family one-story dwellings or to resubdivide the property into two building lots are to be eliminated . . . .'' No mention was made of the ''fence, wall, or hedge'' restriction. To accomplish this the Guttmans obtained a quitclaim from the Rogells to themselves which was recorded immediately preceding the deed to Kahan.* This deed purports to quitclaim to the

---

*The quitclaim deed (Ex. 2) was recorded in Book 45860 at p. 73. The grant deed (Ex. 3) was recorded in the same book at p. 74.

Guttmans all of the Rogell's interest in the property. Subsequently Kahan transferred all his interest in the property to Howard Homes, Inc., plaintiff herein. Howard Homes seeks a judicial declaration that it has a right to carry on the aforementioned construction pursuant to plans which appellants contend are violative of restrictions in both the first Rogell deed (conveying the property to the Guttmans) and the deed from the Guttmans to Kahan. The latter restrictions are also expressly binding upon successors.

The trial court found for plaintiff Howard Homes on all issues material to this appeal except that a portion of one of the dwellings described as a pent-house or roof garden would violate the Guttman restrictions prohibiting two-story residences. Appellants appeal from those portions of the judgment adverse to them.

The first question is whether the building pads, upon which the houses are to be constructed, violate existing deed restrictions. Alpine Drive rises in elevation as it proceeds northward. The Guttman home is the northernmost of the properties. Lot 2 borders the Guttman property on the south, and Lot 1 is just below Lot 2, adjacent to Sunset Boulevard, an east-west street. According to plans, the building pad on the Howard Homes property will rise, at the southern border of the property, more than 5 feet above the level of the ground. Appellants first argue that this structure will constitute a ''fence, hedge, or wall'' within the Rogell restrictions, and that in spite of the Rogell quitclaim, this particular restriction is extant because the escrow instructions reveal that the quitclaim was not secured for the purpose of vitiating this restriction.

A quitclaim deed passes whatever interest, legal or equitable, that the grantor possesses at the time of its execution. (*Graff* v. *Middleton,* 43 Cal. 341; *Soares* v. *Steidtmann,* 130 Cal.App.2d 401 [278 P.2d 953]; *Rosenthal* v. *Landau,* 90 Cal.App.2d 310 [202 P.2d 810].) This rule has been applied to effect the release of restrictions upon the use of property, when the one who sold the property subject to the restrictions executed a quitclaim deed. (*Werner* v. *Graham,* 181 Cal. 174 [183 P. 945].) Yet appellants contend that since they were not *required* by the escrow instructions to eliminate this particular restriction, it was not in fact eliminated by an instrument which has that effect under the law. No authority is cited in support of this contention and it cannot be sustained. For this reason the applicability of

the restriction and the question of estoppel need not be considered.

▮ Appellants next assert that this building pad, consisting of 20,000 cubic yards of dirt, constitutes a structure prohibited by the Guttman deed which restricted construction to two one-story houses and garages. It is not clear how high above the ground this pad stands on the boundary between the Howard Homes and the Guttman property, but it is in excess of 5 feet at that point and more than 17 feet above the curb line of Sunset Boulevard. This argument is made as if the building pad stood completely separate from the house to be erected upon it. Authority is cited for the proposition that a "structure" need not be similar to a house. (*Western Elec. Co.* v. *Colley,* 79 Cal.App. 770 [251 P. 331].) While this may be true, the conclusion that a pad upon which a house is to be built is a "structure" separate from the house within a deed restriction prohibiting "other structures" clearly does not follow.

▮ The next question is whether the proposed houses violate restrictions in the deed from the Guttmans to Kahan (hereafter referred to as the Guttman deed). Appellants contend that the proposed houses neither "front" nor "face" on Alpine Drive as required by the Guttman deed and as found by the trial court. It appears from the evidence that the main entry to each home is in the center of the wall which is parallel to and closest to Alpine Drive. While the southern boundary of Lot 1 is adjacent to Sunset Boulevard, it has driveway access only from Alpine Drive. Lot 2 has no access to nor is it adjacent to any other street. Aside from required side setbacks, the entire width of the lots parallel to Alpine Drive is utilized. Both homes are almost entirely located within the half of the lots closest to Alpine Drive. "As the term [front] is correctly applied to lots in a city tract of land, it means that side of the land toward which the house or building thereon faces, or is expected to face." (*Aller* v. *Berkeley Hall S. Foundation,* 40 Cal.App.2d 31, 35 [103 P.2d 1052].) ▮ While we are not cited to any authority defining the "front" or "face" of a house, the common interpretation of the word is that it means that portion which contains the main entrance and which is the most attractive aesthetically. Particularly is this true in deed restrictions in the nature of the one at bar where the purpose is usually to protect the appearance of the street providing main access to neighboring residences. Clearly the evidence

532

supports the finding. ▮ Appellants base their contention that the homes will not face Alpine Drive on the fact that the planned structures have a longer expanse parallel to Sunset Boulevard than Alpine Drive. Because of this, it is argued, the view from the Guttman house will include the rooftops of the proposed houses, something which would not take place in the absence of the alleged violation, and this fact demonstrates that by "front" and "face" the parties meant to preclude the planned construction. ▮ While it may be true, as appellants contend, that circumstances existing at the time the covenant was made may be considered in ascertaining the intent of the parties (*Walker* v. *Haslett,* 44 Cal.App. 394, 398 [186 P. 622]), "Restrictions against particular uses . . . are not favored, and doubts will, in general, be resolved against them." (*Ibid.*) ▮ The construction here sought is indeed strained, and courts construe restrictive covenants "strictly against the person seeking their enforcement." (*Farquharson* v. *Scoble,* 38 Cal.App. 680, 683 [177 P. 310].)

▮ It is also argued that the proposed house on Lot 2 is not a one-story dwelling within the Guttman deed restriction. Appellants concede that the trial court was correct in ruling that it is merely a question of fact to be determined from the evidence before the court without expert opinion. The main living quarters of the proposed house constitute 5,900 square feet. Below this "main floor" is another level of 2,900 square feet, less than half that of the upper level, containing a service area, swimmers' dressing room, and play room. At the northern, uphill extreme of the lot this level is submerged beneath the surface. The building pad is so graded that its elevation at the northern boundary is 9½ feet higher than the southern boundary. The foundation, at the southern end, necessarily created a lower level, according to plaintiff. No authority is cited as a guide in determining what is a "story" for this purpose. Appellants' argument is apparently to the effect that two levels, the lower of which is partly above the ground at one end of the building, must constitute two stories. But there is testimony that the proposed residence was a one-story building within the meaning of the building code of the city of Beverly Hills and within the policy and practice of the building department of that city. ▮ The power of the appellate court to review a factual finding begins and ends with a determination of whether there is any substantial evidence to support

that finding. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Helmick* v. *Thomas*, 187 Cal.App.2d 395, 397 [9 Cal.Rptr. 512].) ▮▮ It cannot be said that the trial court was without substantial evidence in support of its finding.

▮▮ The last question is whether the trial court erred in denying recovery to the Guttmans for damage to their sprinkler system and sewer installations. The court found that the Guttmans suffered no damage to either due to any wrongful act on the part of Howard Homes. The amount of damage is stipulated. The question is liability. Concerning the damage to the sprinkler system, appellants state that the question (while not so alleged) ''was tried on the theory of breach of an oral agreement.'' Appellant Henry Guttman testified that there was an oral agreement between the parties that the Guttmans were to maintain the vegetation on the Howard Homes property by the use of a sprinkler system that served both properties until such time as Howard Homes gave notice that it intended to commence construction. He further testified that the grading operations which caused the damage were begun without notice to him. It is argued that this failure to give notice resulted in the damage ''in the ordinary course of things'' (Civ. Code, § 3300).

Implicit in the finding above is that the trial judge either didn't believe there was such an oral agreement, or he didn't believe it was violated. ▮▮ ''[I]t is the duty of the trial court to pass upon the credibility of the witnesses and to determine the weight that should be given to their testimony. . . . ▮▮ In evaluating the testimony the trial court is entitled to take into account the motives of the witness and his interest in the outcome of the case.'' (*Munroe* v. *Silvers*, 183 Cal.App.2d 800, 802 [7 Cal.Rptr. 270].) ▮▮ Clearly Henry Guttman is interested in the outcome. It therefore follows that the trial court was not required to give full credence to his testimony, even though uncontradicted. (*Mears* v. *Mears*, 180 Cal.App.2d 484, 501 [4 Cal. Rptr. 618]; *Kraut* v. *Cornell*, 175 Cal.App.2d 528, 532 [346 P.2d 438].)

▮▮ Concerning the sewer line, Guttman testified that he didn't know of its existence before the damage occurred in the course of grading operations. It was beneath the ground level on both the Guttman and Howard Homes properties. Also, the deed made no reservation of an easement for the sewer line. The trial court could therefore reasonably

infer that Howard Homes had no knowledge that a sewer line was located on the premises. Thus there is ample evidence to support the implied finding that Howard Homes was not negligent in causing damage to the line. ▮ However, based on the testimony of Guttman, it is argued that following the break, Howard Homes caused the pipe to be stuffed with rags and debris so that the sewage backed up into the Guttman residence and caused damage, and that this act can allow of no other finding than that Howard Homes was negligent. But, for the reasons above stated, the trial court was not required to accept this testimony.

The portions of the judgment from which the appeal is taken are affirmed.

Ashburn, J., and McMurray, J. pro. tem.,* concurred.

A petition for a rehearing was denied April 24, 1961, and appellants' petition for a hearing by the Supreme Court was denied May 24, 1961.

*Assigned by Chairman of Judicial Council.