**J. B. BLANTON COMPANY, Inc.,**
**Appellant,**

v.

**J. E. LOWE, Chairman et al., Appellees.**

Court of Appeals of Kentucky.

May 26, 1967.

Thomas F. Marshall, Frankfort, for appellant.

William E. Johnson, Johnson & Burton, Allen Prewitt, Jr., Frankfort, for appellees.

STEINFELD, Judge.

This action is an appeal from the refusal of the Board of Zoning Adjustment and Appeals to require the issuance of a building permit to J. B. Blanton Company, Inc. authorizing it to construct a warehouse. From a judgment upholding such refusal the property owner appeals.

The land involved in this controversy is the greater part of Lot 29 of Meredith Manor, which subdivision is located on the Frankfort-Versailles Road (U. S. Highway No. 60) in Frankfort, Kentucky, a city of the second class. Lots 26, 27 and 28 of that subdivision have frontage on the south side of that highway, are each 50 feet in width throughout and vary in depth from 150 feet on the west to 213 feet on the east. Lot 29 which faces Phillips Street (now Lee Court) is south of and contiguous to Lots 26, 27 and 28. Lee Court begins at the south side of the road and extends generally southwardly and runs along the western line of Lots 28 and 29. The eastern and the western boundaries of Lot 29 are 167 feet, the northern boundary is 150 feet, and the plat filed with the complaint shows that

the southern boundary is 158 feet more or less. No part of Lot 29 touches the Frankfort-Versailles Road. It is owned by J. B. Blanton Company, Inc., the appellant herein, it having acquired the land by a deed dated October 30, 1957, recorded in deed book 152, page 168 in the office of the Clerk of the County Court of Franklin County, Kentucky.

Immediately before June 21, 1954, Lot 29 was in an area having a zoning classification of "single family residence district R–1". On that date there were general changes in the zoning classification of property in Frankfort, Kentucky, made by the following resolution:

"All areas zoned as of this date for Local Commercial District 'C–1' use on the Frankfort-Versailles road are to be zoned for Commercial District 'C–2' use. This is to apply on both sides of the road. Also, all areas zoned as of this date for Single Family Residence District 'R–1' use and facing the Frankfort-Versailles road on its south side only are to be re-zoned for Commercial District 'C–2' use as far east as the west side of Atwood Street and for a depth of 300 feet from the Frankfort-Versailles Road."

On August 27, 1965, an officer of J. B. Blanton Company, Inc. acting for it, applied for a building permit so that the company could construct a warehouse on Lot 29. After much controversy during which the permit was issued, later withdrawn and finally denied, the corporation appealed to the Board of Zoning Adjustment and Appeals and requested it to direct that the permit be issued. This request was denied for the reason that the board found the land to be zoned single family residence R–1.

Contending that the quoted resolution changed the zoning classification of that part of Lot 29 which was within 300 feet of the Frankfort-Versailles Road from residence district R–1 to commercial district C–2, the corporation appealed to the Franklin Circuit Court. It demanded that the

decision of the board be reversed and that the permit be issued.

The circuit court heard a number of witnesses and considered many exhibits filed by the parties after which it made findings of fact among which was the following:

"That the June 21, 1954, minutes of the Capital Planning & Zoning Commission changed the zoning of only that R–1 property located on and facing the Frankfort-Versailles Road on the south side of said road, and did not change the zoning classification of Lot No. 29 of Meredith Manor Addition Subdivision; * * *".

It adjudged that the order of the board finding that Lot 29 " * * * is presently zoned R–1, is correct and supported by the evidence; * * *". It ordered the action dismissed.

The first part of the resolution which refers to the transfer of areas from commercial district C–1 to commercial district C–2 is not involved in this controversy. The meaning of the second part which transfers areas from residential district R–1 to commercial district C–2 is determinative of this litigation. It is susceptible of two constructions; therefore, an ambiguity exists. Lane v. Railey, 280 Ky. 319, 133 S.W.2d 74. The meanings of the word "areas" and the word "facing" are critical to the decision. The word "area" is discussed in 6 C.J.S. page 332 where it is said:

"The word 'area' has a somewhat elastic meaning. Originally it meant a broad piece of level ground, but in modern use it can mean any plane surface, the inclosed space on which a building stands, the sunken space or court giving ingress and affording light to the basement of a building; a particular extent of surface; an inclosed yard or opening in a house; an open place adjoining a house; any particular extent of surface; region; tract. In geometry, the superficial contents of any figure, as the

area of a square or triangle; the surface included within any given lines."

Also see State ex rel. McNerney v. Armstrong, 97 Neb. 343, 149 N.W. 786, 788, Ann.Cas.1917A, 554; A. Dicillo & Sons v. Chester Zoning Bd. of Appeals, Ohio Com. Pl., 103 N.E.2d 44, 48; Van Bebber v. Village of Scottville, 13 Ill.App.2d 458, 142 N.E.2d 711, 714; Fleming v. Farmers Peanut Co., C.C.A.Ga., 128 F.2d 404, 406; Atwood v. Humble Oil & Refining Co., C.A. Tex., 338 F.2d 502, 506.

"Area" has been held to mean a unit comprising several tracts. Illinios Central R. Co. v. Village of South Pekin, 374 Ill. 431, 29 N.E.2d 590, 592, 593; People v. Ferris, 18 Ill.App.2d 346, 152 N.E.2d 183, 186. However, in Maisen v. Maxey, Tex.Civ.App., 233 S.W.2d 309, 312, area was held to usually mean tract, space, region or a broad part of land. It has been the subject of litigation and was adjudged to be synonymous with the word tract. United States v. Olesen, D.C.Cal., 196 F.Supp. 688, 690. In the zoning case of Incorporation of Village of Oconomowoc Lake, 264 Wis. 540, 59 N.W.2d 662, 663, the court said it meant a ground area.

■ The question to be decided is what the commission intended. Gateway Construction Co. v. Wallbaum, Ky., 356 S.W.2d 247. Did it mean a tract, a parcel, a plot or a collection of tracts, parcels and plots? The board and the court below adjudged that the former connotation was the intent.

■ The board was of the opinion that the commission intended to use the word "areas" as synonymous with tract rather than in the sense that many tracts or plots were to be included. That conclusion apparently was reached partly because of the word "facing" which is included in the resolution. Lot 29 was not facing the road. Liller v. Louisiana Board of Alcoholic Bev. Control, La.App., 59 So.2d 222; How-

ard Homes, Inc. v. Guttman, 190 Cal.App.2d 526, 12 Cal.Rptr. 244. There were acts of the commission since the adoption of the resolution which indicated that it had interpreted the resolution to mean that only tracts having frontage on the road were included. In 1963 it rezoned certain land off of the road but within 300 feet of it into a commercial district C–2 classification. Contemporaneous construction by an administrative body of a regulation which it had adopted is of great weight in adjudging the meaning of such regulation.

"The court in the interpretation of administrative rules and regulations also applies the doctrine applicable in the interpretation of statutes that great weight will be given to an administrative construction, especially when long continued and uniform, and the limitations of that doctrine are also applied in the construction of rules and regulations. An administrative construction of the agency's own regulations is controlling in determining their meaning unless plainly erroneous or inconsistent with the regulations." 2 Am.Jur.2d 136 Administrative Law, section 307.

■ The board decided that no part of Lot 29 was in a commercial district C–2. It interpreted the regulation of the commission upon sufficient evidence. Consideration of the language, its purpose and the conditions existing when it was enacted was proper. Brown v. Hoblitzell, Ky., 307 S.W. 2d 739.

■ The lower court sustained the board; therefore, we should not and will not hold to the contrary. State of Alabama v. United States, 65 S.Ct. 1274, 325 U.S. 535, 89 L.Ed. 1779.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, OSBORNE, PALMORE and MONTGOMERY, JJ., concur.