RUBY CONSTRUCTION COMPANY, INC., Appellant,

v.

DEPARTMENT OF REVENUE, COMMONWEALTH of Kentucky, by and on Relation of Maurice P. CARPENTER, Commissioner of Revenue, and Kentucky Board of Tax Appeals, Appellees.

Court of Appeals of Kentucky.

Opinion Nov. 3, 1978.

Modified Nov. 10, 1978.

Discretionary Review Denied April 3, 1979.

Bruce M. Reynolds, Stites, McElwain & Fowler, Louisville, for appellant.

William S. Riley, John A. Nefzger, Dept. of Revenue, Frankfort, Dale W. Henley, Paul W. Blair, Hogge, Blair & Dehner, Morehead, for appellees.

Before MARTIN, C. J., and LESTER and WHITE, JJ.

MARTIN, Chief Judge.

This is an appeal of a decision of the Kentucky Board of Tax Appeals as affirmed by the Franklin Circuit Court. We are presented with two issues: first, whether a multiform[1] construction company engaged in interstate operations, which reports its income using the percentage of completion method of accounting, may allocate its income and losses to Kentucky under the formulary apportionment method defined at KRS 141.120(9), or must allocate under the separate accounting method pursuant to KRS 141.010(10)(a) and 103 KAR 16:160 ("Regulation IC–16"); and second, whether the definition of "Taxable Net Income," KRS 141.010(14)(b), precludes the use of the separate accounting method to the extent that it produces a taxable net income which is greater than net income. The Board held the taxpayer, Ruby Construction Company, Inc., must allocate income under the separate accounting method. We disagree and reverse for the reason that the summary procedure mandated by Regulation IC–16 is contrary to both the letter and the spirit of the statute. Accordingly, we need not consider the issue concerning the relationship between net in-

---

1. A multiform business is to be distinguished from one that is unitary. The test is whether a business is unitary is whether its various parts are interdependent and of mutual benefit so as to form one business unit rather than separate business entities, and not whether the operating experience of the parts is the same in all places. It has also been said that the term "unitary business" relates to a concern which carries on one kind of business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration as independent units. By contrast, a dual or multiform business must show units of substantial separateness and completeness, such as might be maintained as an independent business—however convenient and profitable it may be to operate them conjointly—and capable of producing profit themselves. 71 *Am.Jur.2d* State and Local Taxation § 577 at p. 842.

come and net taxable income as set out in KRS 141.010(13) and (14)(b).[2]

The facts in this case were stipulated. The appellant and taxpayer, Ruby Construction Company, Inc., is a general construction contractor and has been engaged in that business since 1952. Ruby generally performs its services pursuant to long-term construction contracts and, accordingly, uses the percentage of completion method of accounting for tax purposes.

During the taxable year ending February 28, 1971, Ruby performed services pursuant to construction contracts only in Indiana and Kentucky. The net income realized from the performance of these construction contracts in Kentucky was $168,229.64. The performance of construction contracts in Indiana produced a loss of $153,225.79. For the same year Ruby had net income from sources other than construction contracts of $77,154.36. For tax purposes Ruby categorized each Kentucky and each Indiana construction job it performed by job number, gross receipts, job costs, and gross profit for each job.

Ruby, in computing the amount of Kentucky income tax owed by it pursuant to KRS 141.040, calculated its tax liability by offsetting its Indiana losses against its Kentucky gains, thereby arriving at a "net income" figure in the amount of $45,220.55. This figure was then used to compute its "taxable net income" which it reported to be $45,181.29.

The Kentucky Department of Revenue conducted a field audit of Ruby's return for the taxable year ending February 28, 1971, and asserted that, under the separate accounting method of apportionment set forth in KRS 141.120(10)(a) and Regulation IC–16, the losses experienced on construction jobs in Indiana were not deductible in determining Kentucky net income or Kentucky taxable income. As a result of their recomputation of Ruby's net income, the Department asserted that Ruby's total net income earned in Kentucky was $196,489 less a Federal tax of $42 resulting in Kentucky taxable income of $196,447. Thus, on March 7, 1974, the Department assessed an income tax deficiency in the amount of $10,588.60 plus statutory interest.

Ruby appealed this ruling to the Board, which affirmed the Department's ruling assessing the deficiency on July 23, 1975. This decision was appealed to the Franklin Circuit Court. On April 28, 1977, the circuit court entered a judgment affirming the decision of the Kentucky Board of Tax Appeals.

Because Ruby is a multi-state corporation, the computation of the Kentucky income tax liability involves a three step procedure. *Kroger Company v. Department of Revenue,* Ky.App., 556 S.W.2d 156 (1977). First, the corporation must compute its gross income;[3] next, the corporation determines its net income.[4] It is only at the third stage when the corporation is calculating its taxable net income [5] that the corpo-

**2.** Appellee urges that the question of the use of the separate accounting method, not questioned below, is not properly before this Court. However, a "new issue" in a tax case should be considered on appeal if it will not result in more or less tax deficiency and does not require the presentation of new evidence. See, *Douglas H. Damm* T.C. Memo, 1977–194. In the present case a decision will not affect the amount of tax owed because appellant will not receive a refund. Administrative decisions may always be reviewed to determine whether they are in accordance with the .law. See, *Hankins Appliance Co. v. Goebel,* Ky., 284 S.W.2d 327 (1956), and KRS 131.370(3)(c).

**3.** KRS 141.010(12) provides, in part that, " 'gross income,' in the case of corporations,

means 'gross income' as defined in § 61 of the internal revenue code . . . ."

**4.** KRS 141.010(13) provides, in part, that " 'net income,' in the case of corporations, means 'gross income' as defined in subsection (12) of this section minus all the deductions from gross income allowed corporations by Chapter I of the Internal Revenue Code . . . ."

**5.** KRS 141.010(14)(b) provides, in part, that " 'taxable net income,' in the case of corporations having income taxable both within and without this state, means 'net income' as defined in subsection (13) of this section and as allocated and apportioned under KRS 141.120 . . . ."

ration's business income is allocated and apportioned to Kentucky under the provisions of KRS 140.120. It is at this third stage of computation that Ruby's and the Department's interpretation diverge.

The general formula for allocating and apportioning income is the three-factor formula set forth in KRS 141.120(9). Basically, that subsection provides that income should be allocated among payroll, property, and sales factors and apportioned to Kentucky in the same ratio that payroll, property, and sales connected with Kentucky operations bear to all payroll, property, and sales of the corporation.

In certain situations, however, such computations will not yield an accurate result in determining income allocable to the business activity of a given enterprise in Kentucky. It is at this point—when the three-factor formula does not fairly represent the business activity of a taxpayer in the state—that KRS 141.120(10) becomes relevant. That subsection provides that if the allocation and apportionment provisions of this section do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the Department may require, with regard to all or any part of the taxpayer's business activity, if reasonable: (a) separate accounting; (b) the exclusion of any one or more of these factors; (c) the inclusion of one or more additional factors which will clearly represent the taxpayer's business activity in this state; or (d) the employment of any other method to effectuate an equi-

table allocation and apportionment of the taxpayer's income. Because it allows the Commissioner of the Department of Revenue or the taxpayer to modify, or, in some events, totally disregard the factors set out in KRS 141.120(9), KRS 141.120(10) is sometimes called the relief clause.

■ Of particular significance insofar as this appeal is concerned is Regulation IC–16 issued under KRS 141.120(10) by the Kentucky Department of Revenue. This regulation, the basic provisions of which were adopted in 1962, seeks to interpret KRS 141.120(10) as that statute applies to construction companies.[6] Kentucky, however, adopted the Uniform Division of Income for Tax Purposes Act in 1966. Despite the sweeping changes that the Uniform Act effected in the income tax law of Kentucky, Regulation IC–16 is substantially the same regulation that was enacted in 1962.[7] While the appellee argues that the regulation is based upon "historical experience," the record below is silent as to just how this "experience" was gained. Indeed, considering that Kentucky law prior to 1966 taxed only income earned in Kentucky and that the Act taxes the portion of net income allocated to Kentucky-based business activities, we must question the historical experience on which the regulation is based. Certainly in light of the regulation, there has been no experience in taxing contractors under the formulary allocation method since 1966. While contemporaneous construction by an administrative body of a regulation which it has adopted is of great

---

**6.** The sections of IC–16 pertinent to this litigation provide as follows: "Section 2. Construction Companies. (1) Construction companies shall determine net income earned within Kentucky by separate accounting, except as provided in this section. In any case where a construction company has elected to report on the completed contract basis, the use of separate accounting to determine Kentucky net income is mandatory. Construction companies will not, however, be relieved of the responsibility of submitting to the department an application for separate accounting prior to filing an income tax return for the first period for which authorization is desired. . . .

(3) In any case where the activities of a construction company are such that separate accounting is not practical, the department may prescribe a method or formula to equitably determine the net income earned within Kentucky."

**7.** Mr. Gerald Geiser, Assistant Director of the Income Tax Division of the Department, testified before the Board that "[T]he current regulation has been revised and amended between 1962 and the year under audit but it is substantially the opinion of the Department that it is the same regulation."

weight in adjudging the validity and meaning of such regulation, see *J. B. Blanton v. Lowe*, Ky., 415 S.W.2d 376 (1966), an administrative agency may not seek to amend, alter, enlarge, or limit terms of legislative enactment. *Linkous v. Darch*, Ky., 323 S.W.2d 850 (1959). We cannot sustain the validity of a regulation that contravenes the statute it seeks to interpret. *Alcoholic Beverage Control Board v. Hunter*, Ky., 331 S.W.2d 280 (1960). In order to determine whether the separate accounting procedure is valid in light of the express provisions of the statute and the intent of the legislature, we turn to the statute and to those decisions that have construed its meaning.

The crucial words in analyzing the significance of KRS 141.120(10) are found in the preamble, "[I]f the allocation and apportionment do not fairly represent the extent of the taxpayer's business in this state . . . .". The plain meaning of this phrase is that only when the three-factor formula distorts or unfairly represents income attributable to business activities in Kentucky will another method of computation be used by the Department in determining income attributable to Kentucky. This interpretation of the statute has been followed by courts in other jurisdictions which have also adopted the Uniform Act. However, no state has adopted the meaning of the statute as found in § 2(3) of Kentucky Regulation IC–16, which provides that only when the separate accounting method proves to unfairly represent business activity will the formulary apportionment method of allocation be used to compute income.

An example of such an interpretation is *Donald M. Drake Co. v. Dept. of Revenue*, Or., 263 Or. 26, 500 P.2d 1041 (1972), where a general construction contractor was required by the Oregon Department of Revenue to use the separate accounting method of allocation and therefore could not deduct losses incurred in its California operations. The Tax Court of Oregon found the business to be a unitary one, which was entitled to use the formulary apportionment allocation of income. The Supreme Court of Oregon upheld the Tax Court solely on the basis of the changes in the tax law brought by the Uniform Act. *Drake, supra,* at 1042. Of special significance in the present case is the court's holding that formulary apportionment is now the generally accepted accounting method of allocating income under the Uniform Act. Further, the court held that the relief provision was to be interpreted narrowly because to do otherwise would defeat the purposes of obtaining uniformity among the states by the adoption of the Uniform Act. *Drake, supra,* at 1044. The Oregon statute, which is identical to KRS 141.120(10), places the burden on the Revenue Department to prove the propriety of applying any allocation method other than the formulary apportionment method. *Drake, supra,* at 1044.

In the present case the Department of Revenue argues that *Drake* is distinguishable because the construction company was found to be a unitary business and because Oregon had no regulation analogous to Regulation IC–16. However, it is circular reasoning to attempt to distinguish *Drake* from the present case on the basis of Regulation IC–16 because it is that very regulation which is under review here. In regard to appellee's attempt to distinguish the cases on the basis of the unitary-multiform distinction, the court in *Drake* nowhere mentions this factor in reaching its decision.

Similarly, in the case of *Amoco Production Co. v. Armold*, Kan., 213 Kan. 636, 518 P.2d 453 (1974), a company that sold, produced, and processed oil and gas was required by regulation to allocate income by the separate accounting method. This regulation required that once a method of allocation had been selected the burden of proving a change of method was upon the party seeking the change. In regard to *Amoco*, there had never been a specific Kansas administrative finding that the formulary apportionment method of allocation did not fairly allocate income according to business activity. While recognizing that the determination of proper methods of allocating income was a duty cast upon the state taxing agency, the court held that

interpretation of the statute was a question of law and that the function of the court was to give the statute the effect intended by the legislature. *Amoco, supra,* 518 P.2d at 455. The court reasoned that the Director of the Department of Revenue had the burdens of making both negative findings concerning formulary apportionment as well as specifying reasons why it did not fairly represent business activity in the state. A mere finding that separate accounting fairly represented the extent of a taxpayer's business activity was not enough. *Amoco, supra,* 518 P.2d at 458. In this light, the testimony of Mr. Geiser before the Kentucky Board of Tax Appeals is quite interesting, for he testified that only in cases where the Department of Revenue finds that separate accounting is inaccurate will the formulary apportionment method be used. Such a method of allocating income is clearly contrary to the plain meaning of the preamble of KRS 141.120(10) and to the mandate of uniformity in the Act. Thus, the court held that the basic purpose of the Uniform Act was to simplify the computation of state taxes, and that simplicity can come only through uniformity of interpretation. *Cf. Moorman Manufacturing Co. v. G. D. Blair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978).

The court in *Amoco* also thought it significant that the taxing authorities were uncertain as to the changes brought by the Uniform Act. The Kansas board framed its issues in terms of income rather than in terms of business activity. Mr. Geiser's testimony before the Board in the present case shows a similar uncertainty, because he speaks of "reflections of income—" rather than of "income that reflects business activity" or "the extent of business activity."

Finally, the court in *Amoco* noted that a narrow, pro-uniformity construction of the relief provision may operate to provide a tax loophole. A taxpayer could file under the separate accounting method in states where it is to his advantage, i. e., where losses have occurred, while simultaneously urging the use of formulary apportionment or narrow construction in other states, i. e., where in-state gains would be diminished

by out-of-state losses. However, we have no findings by the Department of Revenue on this point, and do not believe we must reach this issue.

The most recent decision on the issue of alternatives to formulary allocation is *St. Johnsbury Trading Co. v. State,* N.H., 385 A.2d 215 (1978). In that case, the Commissioner's delegate modified the three-factor formula without first finding the formula did not clearly reflect business activity within the state. Citing the language of the preamble to the Uniform Act and the *Amoco* and *Drake* cases, the court held that "before an alternative method of apportionment can be utilized, the commissioner must first find that the statutory method of apportionment does not fairly represent the taxpayer's business activity in the State" and that "the party seeking to use an alternative method of determination bears the burden of proof." *St. Johnsbury Trading Co., supra,* at p. 217.

■■■ The decision of the Kentucky Board of Tax Appeals in the present case completely rejects the reasoning of the cases cited. The Board takes the position that the 1962 regulation takes precedence over the 1966 statute. The board stated that in its opinion:

> [T]he Department's evidence that Ruby's Kentucky income is accurately shown belies any attempt by the taxpayer to demonstrate that Regulation IC–16, which authorizes the use of separate accounting by construction companies, is an unreasonable regulation.

This process of finding separate accounting fair and then placing the burden of proof upon the taxpayer to show otherwise creates a direct conflict with the language and purpose of KRS 141.120(10). The Board held that this finding was accurate because Ruby is a multiform business corporation. While that fact may be significant in determining that a state has not transgressed the bounds of the Fourteenth Amendment of the United States Constitution insofar as procedural due process is concerned, see *Moorman, supra,* 98 S.Ct. at page 2345, and

**254**

Boren, G. "Separate Accounting in California and Uniformity in Apportioning Corporate Income," 18 *UCLA L.Rev.* 478, 490 (1970), the multiform/unitary distinction is simply foreign to the concept of the Uniform Act. Indeed, the statutory and constitutional requirements are irrelevant to each other except in rare instances, and such instances are not presented in this case. See *Moorman, id.* Thus, while the finding that a business is multiform may well be a significant factor in determining the propriety of the application of KRS 141.120(10), it cannot provide the conclusive basis for such a finding. Even the wide latitude granted the Commissioner of Revenue by KRS 13.-082 is not sufficient to support a finding based upon a distinction that is not mentioned in the Act.

The mandate of uniformity, to which Kentucky adheres,[8] requires that the Commissioner affirmatively find that the formulary method of allocation fails to fairly represent business activity within this state before he makes use of the relief provision. The conclusive language of the regulation, especially § 2(3), obviates any such finding and is therefore contrary to the natural and reasonable meaning of the statute. *Cf. Mertens Law of Federal Income Taxation* § 3.21 and the cases collected at footnotes 77, 81–83 and 85 and especially the case of *Scofield v. Lewis,* 251 F.2d 128 (5th Cir. 1958), which held that a regulation which was valid when promulgated became invalid upon the enactment of a statute in conflict with the regulation. We hold that Regulation IC–16 has been shown to be invalid in that it is inconsistent with the statute, is clearly unreasonable, and is inappropriate to carry out the ends specified in the statute which it is intended to implement. See *Hohnke v. Commonwealth,* Ky., 451 S.W.2d 162, 166 (1970).

The decision of the Franklin Circuit Court is reversed, and the case remanded to that court with instructions to remand to the Kentucky Board of Tax Appeals. Upon remand, the Board of Tax Appeals must consider whether the formulary allocation method as set out in KRS 141.010(9) fails to fairly represent the business activities of Ruby in Kentucky.

All concur.