**E–TOWN QUARRY, Appellant,**

v.

**Gary GOODMAN; Special Fund; Hon. James L. Kerr, administrative law judge; Workers' Compensation Board; and Dr. Shared Patel, Appellees.**

No. 1999–CA–000781–WC.

Court of Appeals of Kentucky.

Feb. 18, 2000.

Gregory K. Berry, Glasgow, for Appellant.

John W. Bland, Jr., Elizabethtown, for Appellee, Gary Goodman.

Benjamin C. Johnson, Louisville, for Appellee, Special Fund.

Before: DYCHE, McANULTY, and SCHRODER, Judges.

## OPINION

McANULTY, Judge.

E–Town Quarry ("E–Town") petitions for review of an opinion of the Workers' Compensation Board affirming the decision of the Administrative Law Judge ("ALJ") holding E–Town responsible for certain medical expenses related to psychiatric treatment incurred by Gary Goodman. After reviewing the record, we affirm.

In February 1995, while an employee of E–Town, Goodman suffered an extensive injury to his right arm when it was crushed in a conveyor. In addition to the physical injuries, Goodman was diagnosed to be suffering from post-traumatic stress disorder, depression, and sleep disturbance related to the accident. Goodman was evaluated and received psychiatric treat-

ment from Dr. Shared Patel. Based on the evidence, including testimony from several physicians and two psychiatrists, Goodman was found to be totally occupationally disabled with a need for further psychiatric treatment. Dr. Patel has continued to provide psychiatric treatment to Goodman consisting of a weekly individual session for counseling, pharmacological management of the prescription medicine Luvox, and one weekly group counseling session.

In May 1997, E–Town sought a Utilization Review consistent with Kentucky Administrative Regulations ("KAR"), Title 803, Chapter 25, Section 190, to assess the medical necessity and appropriateness of Goodman's continued psychiatric treatment. *See* KRS 342.035(5). On May 29, 1997, Dr. Daniel Wolen, who is certified in occupational and environmental medicine, conducted a review of the records for the Utilization Review and questioned the need for the treatment schedule followed by Dr. Patel. Dr. Wolen opined that Goodman's psychological condition had not changed during the year prior to the review and that he was no longer suicidal, so close management of his condition was no longer necessary. Dr. Wolen believed that Goodman's counseling sessions could be significantly reduced or eliminated with a lower level of care by a psychologist or social worker and only occasional visits to a psychiatrist for review of his drug treatment. Given that his evaluation was based entirely on a review of medical documents, however, Dr. Wolen recommended that Goodman also be seen and evaluated by a psychologist concerning future treatment.

In July 1997, Dr. Brian Monsma, a licensed clinical psychologist, interviewed Goodman and performed some clinical testing. Dr. Monsma found that Goodman suffered from post-traumatic stress disorder and depression, but felt that his condition had been treated appropriately and was improving. He recommended a limited three-month period of continued group therapy sessions with continued provision of Luvox by a family practice physician and occasional follow-up appointments with Dr. Patel when needed. Dr. Monsma considered Goodman a good candidate for vocational rehabilitation.

Following completion of the Utilization Review, E–Town's workers' compensation carrier refused to continue paying for Goodman's treatment by Dr. Patel. On January 5, 1998, E–Town filed a notice of a medical fee dispute and a motion to reopen the workers' compensation claim to resolve the dispute over payment for Dr. Patel's psychiatric treatment. KRS 342.020. The motion to reopen was assigned to an arbitrator, who found that the treatment rendered by Dr. Patel was compensable. As part of the dispute resolution process, E–Town filed a motion requesting that the arbitrator require Goodman to complete or exhaust the Utilization Review process prior to a ruling on the motion to reopen, which the arbitrator denied.

On June 2, 1998, E–Town requested a hearing before an administrative law judge. The ALJ conducted a hearing on October 6, 1998, at which Goodman and his wife testified. The ALJ also considered the reports of Dr. Wolen and Dr. Monsma, the deposition of Dr. Patel, and the reports of several surgeons who had treated Goodman. Goodman testified that his depression worsened during a four-month period he did not attend the counseling sessions because of the dispute over payment with his employer. He stated that the counseling sessions helped him cope with his depression and other emotional problems. Goodman's wife also stated that her husband appeared to benefit from the individual counseling and group therapy sessions. Dr. Patel indicated that the counseling sessions had helped Goodman in the past and that the group therapy sessions allowed him to deal with his disability and emotional problems through interaction with others in a similar situation. Dr. Patel felt continued psychiatric treatment would benefit Goodman. At the hearing, E–Town raised the issue of exhaustion of the

Utilization Review process. The ALJ accepted the medical opinion of Dr. Patel and found the testimony of Goodman and his wife credible. He found that continued psychiatric treatment, including the group therapy sessions, was reasonable and necessary, and concluded that the costs associated with this treatment were compensable. The ALJ did not specifically address E–Town's exhaustion issue in his opinion, but he implicitly rejected it.

On appeal to the Workers' Compensation Board, E–Town relied solely on the exhaustion issue pertaining to the Utilization Review procedure. The Board found that there was sufficient evidence in the record to support the ALJ's conclusion that continuation of the psychotherapy treatment was reasonable and necessary. It also rejected E–Town's argument that Goodman's failure to exhaust the administrative Utilization Review procedure allowed it to avoid payment of the medical bills associated with Dr. Patel's treatment. The Board also indicated in its opinion that E–Town was estopped from relying on Goodman's failure to exhaust the Utilization Review because it had not strictly complied with the appeal procedures set forth under the review process as set forth in 803 KAR 25:190. E–Town has appealed the Board's decision to this Court.

On appeal, E–Town has raised a single issue as stated in its brief: "Should the Appellant have to pay for medical services when Utilization Review deemed them to be unnecessary and there is no appeal of that decision?" E–Town argues that in order to effectuate the purpose of the Utilization Review process, an employer must be able to rely on the opinion and recommendation of the reviewer when the employee fails to appeal or contest that opinion.

In rejecting E–Town's position, the Board stated in its opinion as follows:

> The utilization review regulation is created pursuant to KRS 342.020. It is designed to help the parties resolve medical expense issues without the need to resort to litigation. It is not designed nor authorized to replace the responsibility of Arbitrators and Administrative Law Judges to decide medical disputes that are presented to them.... There is nothing in the regulation nor the statute that accords special weight to evidence from a UR [Utilization Review] doctor once the matter is brought to adjudication. Even if the regulation attempted to create such an impact, it would be in conflict with the adjudicatory rights established by the Kentucky Legislature, which in workers' compensation rests solely with Arbitrators and Administrative Law Judges. *See* KRS 342.270 and KRS 342.275. Utilization review was not intended as a sword for the skewering of medical benefits issues but rather was designed to provide an opportunity to all parties in a medical fee question to avoid the necessity of lengthy litigation process. It was also created in an effort to afford employers and their carriers an opportunity to thoroughly evaluate medical expenses, including seeking an opinion from a physician before finding themselves in the position of having to challenge a medical bill within thirty days as is required by KRS 342.020.

In a separate concurring opinion, Board Member Stanley noted that in Section 1 of 803 KAR 25:190, the definitions of the terms "Utilization Review" and "Denial" refer to the purpose of the review procedure as providing *recommendations* for payment of medical bills. He further stated:

> The purpose of the utilization review program is to manage and assess patient care through the assessment of the medical necessity and appropriateness of medical care for purposes of making "recommendations" to various medical providers. Nothing in this regulation or its enabling statute, KRS 342.035, makes utilization review findings conclusive on an Arbitrator or Administrative Law Judge. By express regulatory defini-

tion, utilization review is intended as an informal method for proposing recommendations with regard to the necessity and reasonableness of medical treatments.

■ After reviewing 803 KAR 25:190 and KRS 342.035, we agree with the Board that exhaustion of the Utilization Review administrative procedure is not required in order to make medical costs compensable under the workers' compensation law. While the Utilization Review regulation requires that the employer provide a "reconsideration process" for appeal of an initial decision by a reviewer, there is nothing in the regulation mandating exhaustion or giving the opinion of a reviewer under the Utilization Review presumptive weight in a subsequent medical fee dispute for failing to seek reconsideration.[1] Moreover, the courts generally give substantial deference to an agency's interpretation of its own regulations. *Hagan v. Farris*, Ky., 807 S.W.2d 488, 490 (1991); *J.B. Blanton Co. v. Lowe*, Ky., 415 S.W.2d 376 (1967). E–Town has not shown that the Board's interpretation of the Utilization Review regulation is arbitrary or erroneous. As the Board's opinion indicates, failure to engraft an exhaustion requirement on the Utilization Review process would not defeat the purpose of the procedure. The Utilization Review process is designed to provide additional expert opinions on medical treatment rather than resolve disputes through an adjudicatory procedure. As such, applying a procedural bar for failure to complete the review process would be inappropriate. Although the Utilization Review procedure is a relatively recent creation and as the Board recognized the law is developing in this area, we do not believe the Board's decision should be disturbed.

■ In addition, E–Town has not demonstrated that it fully complied with the procedures set out in 803 KAR 25:190. Despite its contention of full compliance, the record supports the Board's finding that E–Town did not present sufficient evidence that it provided the required written notice of the initial Utilization Review decision to Dr. Patel and Goodman. Accordingly, E–Town cannot justifiably rely on Goodman's failure to exhaust the administrative reconsideration procedures. The record also refutes E–Town's claim that its lack of compliance with the regulation was not contested. Goodman raised this issue in his brief before the Board.

For the foregoing reasons, we affirm the opinion of the Workers' Compensation Board.

ALL CONCUR.

---

1. We note that 1996 version of 803 KAR 25:190 was applicable to this case. The regulation was amended in 1998, but the amendments would not have affected the outcome.