835 So.2d 1042 (2002)
Ex parte SOUTHEAST ALABAMA MEDICAL CENTER.
(In re Jennifer Sorrells v. Houston County Health Care Authority d/b/a Southeast Alabama Medical Center).
2001298.
Court of Civil Appeals of Alabama.
May 24, 2002.
*1044 Sarah Carlisle Pflaum of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for petitioner.
Tracy W. Cary of Morris, Cary & Andrews, L.L.C., Dothan, for respondent.
Lawrence T. King of Goozee, King & Horsley, L.L.P., Birmingham, for amici curiae Ray Whitaker, Phillip Akins, and Goozee, King & Horsley, L.L.P., on behalf of the respondent.
MURDOCK, Judge.
This case concerns the refusal of an employer to preapprove a medical treatment for an injured employee covered under Alabama's Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975 ("the Act"). Section 25-5-293(k), Ala.Code 1975, allows an employer to conduct "medical-necessity determinations," but only if it adopts and follows procedures for doing so that are consistent with state regulations contemplated by the Act. The employer in the present case has chosen to adopt such procedures and to conduct such medical-necessity determinations. The question thus presented is whether the employee must exhaust those procedures before she may have recourse to the courts to litigate her right to receive a treatment and have it paid for by the employer.

I. Facts and Procedural History

In June 1999, Jennifer Sorrells filed an action seeking workers' compensation benefits from her employer, Houston County Health Care Authority d/b/a Southeast Alabama Medical Center ("SEAMC") for a 1995 injury. It is undisputed that the injury arose out of and in the course of Sorrell's employment with SEAMC.
SEAMC authorized Sorrells to receive treatment from Dr. Richard A. Sanders of the Alabama Sports Medicine and Orthopedic Center in Birmingham. In December 1999, Dr. Sanders outlined a plan for treating Sorrells that included three separate surgical procedures.
Sometime before June 22, 2001, SEAMC refused to preapprove a proposed surgery on Sorrell.[1] SEAMC's refusal was made after receiving a written review of Sorrell's medical records by a physician other than *1045 Dr. Sanders who reviewed those records at SEAMC's request. On June 22, 2001, Sorrells moved the trial court to require SEAMC to pay for the surgery at issue. The trial court scheduled a hearing on Sorrell's motion for August 30, 2001, on which date the trial court entered an order requiring SEAMC to pay for the surgery.
SEAMC petitioned this court for a writ of mandamus directing the trial court to rescind its August 30, 2001, order. This court has jurisdiction to consider a writ of mandamus related to a matter within its original jurisdiction. Ala.Code 1975, § 12-3-11.
"A writ of mandamus is an extraordinary remedy, and it will be `issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts & Serv. Co., 590 So.2d 252 (Ala.1991)."
Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998).

II. Section 25-5-77(a) and City of Auburn v. Brown
In their briefs to this court, both parties argue at length as to the import of Ala. Code 1975, § 25-5-77(a), and City of Auburn v. Brown, 638 So.2d 1339 (Ala.Civ. App.1993). A proper view of § 25-5-293 and the regulations promulgated pursuant thereto does indeed begin with a proper view of § 25-5-77(a) and this court's decision in City of Auburn v. Brown.
The first sentence of § 25-5-77(a) grants to employees the right to receive, while obligating employers to pay for, "reasonably necessary medical and surgical treatment."[2] The last sentence of § 25-5-77(a) expressly provides that "[a]ll cases of dispute as to the necessity and value of the services shall be determined by the tribunal having jurisdiction of the claim of the injured employee for compensation." This latter provision is not limited to "disputes" initiated by either the employer or the employee. From a statutory perspective, if there were no other conditions or limitations, the first and last sentences of § 25-5-77(a) would indicate that whenever a dispute arises as to whether a given treatment falls within the parameters of what is "reasonably necessary," any party to that dispute may proceed at that juncture to have the dispute "determined" by the circuit court.[3]
*1046 Section 25-5-77(a), however, does indicate a further condition with respect to an employee's rights. That Code section, while contemplating that an employer has the right to select the initial treating physician for the injured employee, see United States v. Bear Brothers, Inc., 355 So.2d 1133, 1137 (Ala.Civ.App. 1978) (decided under earlier, but similar, version of § 25-5-77(a)), expressly provides that "[i]f the employee is dissatisfied with the initial treating physician selected by the employer ..., the employee may so advise the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer." This provision indicates that before an employee may seek judicial vindication of his or her view of what medical treatment is reasonably necessary, the employee must first pursue a second opinion from an authorized physician selected from a panel of four physicians as described.[4]
While prior use of the four-physician-panel procedure outlined in § 25-5-77(a) generally constitutes a statutory condition to an employee's right to receive reasonably necessary medical treatment, and to judicial relief to enforce that right, before the 1992 amendments to the Act, see Act No. 92-537, Ala. Acts 1992, there was no similar statutory condition or limitation on the employer's right under the first sentence *1047 of § 25-5-77(a) to refuse payment for a treatment that it could show was not "reasonably necessary." Accordingly, under the pre-1992 Act, there was no statutory condition or limitation on the employer's right to seek a judicial declaration that it was correct in disputing the reasonable necessity of a given treatment. Nor should this court's decision in City of Auburn[5] be construed as imposing such a condition or limitation on the employer's rights.
It is important to recognize the factual context in which City of Auburn was decided and the narrow issue presented in that case. In City of Auburn, this court was confronted with a case in which different authorized, qualified physicians recommended two different treatments. City of Auburn was not a case where an employer attempted to prove that one of the treatments recommended by one of the authorized physicians was not a reasonable treatment for an employee's condition. There was no allegation that any of the three authorized physicians in City of Auburn was recommending a treatment that was outside the standard of care or would not have been likely to meaningfully or effectively improve the patient's condition; nor was there any allegation in City of Auburn of any fraud on the part of any of the physicians in the making of recommendations for treatment. As this court explained, quoting the trial court, "`each of the ... doctors [is a] qualified neurosurgeon and ... [the employer] approved, at least initially, each as a treating physician for [the employee].'" 638 So.2d at 1340.
The question in City of Auburn, therefore, was not whether either of the recommended treatments was or was not a reasonable treatment. For all that appears from the opinion of this court, the different authorized physicians in City of Auburn simply had reasonable differences of medical opinion as to the better treatment for the patient. From a medical standpoint, in other words, the two different treatment recommendations at issue both could have been considered to fall within the parameters of what was "reasonably necessary." The question, as this court framed it, was instead merely "whether ... the decision between conflicting medical opinions as to the reasonable and necessary course of treatment of an employee in a workmen's compensation action should be left to the employee." Id. (emphasis added).[6] This court then went on to examine the issue as one of who should "determin[e] who the treating physician will be" in a workers' compensation case, explaining that the procedure for choosing a physician from a panel of four allows both the employee and the employer to have some input into the selection of the treating physician.[7]Id. at 1340-41.
*1048 Limited then to the essential question before the court, City of Auburn stands for the proposition that when two qualified physicians, each of whom is authorized by the employer, recommend two different treatments, each of which can be considered a reasonably necessary treatment for the employee's condition, an employer cannot dictate which physician, and thereby which treatment, must be chosen. The choice between physicians in this circumstance belongs to the patient.
This essential holding of City of Auburn remains good law after the 1992 amendments to the Act. Recently, our Supreme Court indicated its approval of the analysis set forth by this court in City of Auburn with respect to the question of "`who the treating physician will be in a workmen's compensation case.'" Ex parte, Wal-Mart Stores, Inc., 794 So.2d 1085, 1088 (Ala. 2001) (quoting City of Auburn, 638 So.2d at 1340). As in City of Auburn, the general issue before the Supreme Court in Ex parte Wal-Mart was who would control the choice of physician. The Supreme Court quoted at length from the analysis of City of Auburn with respect to this issue:
"`In determining who the treating physician will be in a workmen's compensation case the drafters of [§ 25-5-77(a)] took into consideration two desirable values. Professor Larson describes the values as follows:
"`"The first is the value of allowing an employee, as far as possible, to choose his own doctor. This value stems from the confidential nature of the doctor-patient relation, from the desirability of the patient's trusting the doctor, and from various other considerations. The other desirable value is that of achieving the maximum standards of rehabilitation by permitting the compensation system to exercise continuous control of the nature and quality of medical services from the moment of injury. If the injured employee has completely unlimited free choice of his doctor, in some cases he may select a doctor, because of personal relationship or acquaintance, who is not qualified to deal with the particular kind of case, or who at any rate is incapable of providing service of the quality required for the optimum rehabilitation process.'

*1049 "`2 A. Larson, The Law of Workmen's Compensation § 61-12(b), at 10-790 (1989).'
"... After quoting Ala.Code 1975, § 25-5-77(a), which deals with the procedure in Alabama for choosing a treating physician, the Court of Civil Appeals stated:
"`By developing a system for the selection of a treating physician in § 25-5-77, the Alabama Legislature was apparently attempting to strike a balance between the two values.'"
794 So.2d at 1088 (Ala.2001) (emphasis added; quoting City of Auburn, 638 So.2d at 1340-41).
Distinguishing the facts presented in City of Auburn, however, the Alabama Supreme Court explained in Ex parte Wal-Mart that the employee in that case was not free to select the "previously authorized" treating physician because that physician was no longer authorized. The court explained that the employee's initial authorized physician was Dr. Klassen in Anniston. The "previously authorized" treating physician, however, whose treatment the employee had elected to pursue, was a Tennessee physician from whom the employee had merely been authorized to obtain a consultation while living in Tennessee for two months. "Upon [the plaintiff's] return to Alabama, Dr. Klassen remained the plaintiff's authorized treating physician." 794 So.2d at 1086. City of Auburn was not applicable in Ex parte Wal-Mart because that case did not present the question of who would choose as between two or more authorized treating physicians.[8]
Similarly, this court relied upon City of Auburn in its relatively recent decision in Waffle House, Inc. v. Howard, 794 So.2d 1123 (Ala.Civ.App.2000). The issue in Waffle House was, once again, who has the authority to select from among two or more authorized, treating physicians. The trial court in Waffle House phrased the issue as follows: "`Can the employer or its carrier refuse to let an injured employee return to a previous authorized physician when that physician, with no intent to discharge the employee from his care, refers the employee to an additional approved physician?'" 794 So.2d at 1129. This court agreed with the trial court that the employer could not refuse to allow an employee to be treated by an authorized physician, citing City of Auburn and other cases for the proposition that "when an employer authorizes treatment for an employee by one physician and the employee is satisfied with the treatment provided by that physician, the employer loses its authority to withdraw its authorization for treatment by that physician." Waffle House, Inc., 794 So.2d at 1130 (emphasis added).

III. 1992 Amendments to the Workers' Compensation Act

We see nothing in the 1992 amendments to the Workers' Compensation Act that abrogates the essential holding of City of Auburnthat the employee, not the employer, has the right to choose between two qualified, authorized physicians who would provide the employee with different medical treatments, at least where both treatments are within the parameters of what is reasonably necessary. That this essential holding remains viable after the adoption of the 1992 amendments seems clear enough from the manner in which both the Supreme Court and this court have recently relied upon City of Auburn.
*1050 With the holding of City of Auburn thus properly viewed, however, it becomes clear that simply answering the question of the continued viability of City of Auburn is not in and of itself sufficient to guide us to the correct outcome in the present case. The question in the present case is not who chooses between two different qualified, authorized physicians making two different, but reasonable, treatment recommendations, but rather who decides whether a single treatment recommended by a single authorized physician is or is not a reasonably necessary treatment.
As discussed at the outset, if it is the employee who believes the recommended treatment is not reasonable, his or her first remedy is to seek treatment from a second authorized physician under the panel-of-four procedure outlined in § 25-5-77(a). If still not satisfied, the employee may then turn to the courts for a determination of the dispute. Ala.Code 1975, § 25-5-77(a). Nothing in the 1992 amendments to the Act changed this procedure.
However, when the employee is satisfied with the treating physician and his recommendation, but the employer wishes to dispute the treatment's necessity or appropriateness, may the employer still do so in light of the 1992 amendments to the Act? If so, is the employer's ability to dispute necessity or appropriateness now limited or conditioned in some way in the wake of those amendments?
As to the former question, it is clear that the right of the employer to refuse payment for medical treatments that are not reasonably necessary remains intact. No change was made to the first sentence of § 25-5-77(a); the employer continues to have no obligation to pay for medical treatments that are not "reasonably necessary."
Nor was any change made in the last sentence of § 25-5-77(a) by the 1992 amendments; the employer continues to have the right to seek judicial relief in the event it disputes the reasonable necessity of a medical treatment. However, just as the use of the four-physician-panel procedure has served as a precondition to the right of an employee to seek the aid of the courts to obtain reasonably necessary medical treatments, the 1992 amendments have now conditioned an employer's right to refuse to pay for a treatment and to vindicate that refusal in court. When the ground for such a refusal is an employer's decision that a treatment recommended by an authorized physician is not reasonably necessary, the employer may properly assert that decision only if the employer has first followed, and has made that decision based upon, certain procedures. Specifically, while § 25-5-293(g) of the Act expressly authorizes employers and their insurers to conduct utilization reviews to aid in the stated goal of cost-containment,[9] § 25-5-293(k) now states that "medical necessity determinations ... which relate to the services of physicians ... shall only be conducted under and in accordance with policies, guidelines, or regulations which have been jointly approved by the Workers' Compensation Medical Services Board and the director [of the Department of Industrial Relations]." Thus, § 25-5-293(k) places a condition on the employer and its right to refuse to agree to pay for a medical treatment on the ground that it is not reasonably necessary.

A. Utilization Review

While the plain language of § 25-5-293(k) now places a condition on the employer's *1051 ability to properly deny payment for medical treatment based on a medical-necessity determination, the full nature of that condition is not set out in the statute itself. The regulations promulgated by the Department of Industrial Relations pursuant to § 25-5-293(k) specify a process of potentially five steps that now must serve as the predicate for any decision by the employer to deny payment for a medical treatment prescribed by an authorized physician. The first four steps of this process constitute what is known as a "utilization review."
Utilization review begins with a review of the employee's medical records by a technical reviewer (see Ala. Admin. Code, r. 480-5-5-.06(1) and -.07(2)), followed by a first-level clinical review conducted by an individual with certain nursing qualifications (see Ala. Admin. Code, r. 480-5-5.06(2) and -.07(3)), and a second-level clinical review by a physician (see Ala. Admin. Code, r. 480-5-5-.06(3) and -.07(4)). If the second-level clinical review leads to a decision by the employer to deny payment, "[t]he claimant may request through the ordering provider that a Third Level Clinical Review be conducted." Ala. Admin. Code, r. 480-5-5-.07(6) (emphasis added). Similarly, Rule 480-5-5-09(7) provides that any precertification denial "is subject to" third-level clinical review, and Rule 480-5-5-23(1) provides in part that precertification denials based on adverse medical-necessity determinations "shall be subject to peer review and/or administrative appeal" at the request of any party. (The "Third-Level Clinical Review" is also known as "Peer Clinical Review.")
If it is to be requested, third-level clinical review is initiated by the employee's healthcare provider (typically the authorized treating physician). Ala. Admin. Code, r. XXX-X-X-XX(1)(a)2. The provider is to forward the employee's medical records to a physician who, among other things, is a specialist in the same area as the physician who is recommending the disputed treatment. Ala. Admin. Code, r. XXX-X-X-XX(4). The time period prescribed for the completion of peer clinical review, unless an expedited appeal is required, is "30 calendar days." Ala. Admin. Code, r. 480-5-5-.23(1)(a)3.
The regulations repeatedly make it clear that utilization review, including precertification of the medical necessity of various treatments, may be done by either the employer or the employer's insurer. It may be performed by the employer's or insurer's own employees, or through contractual agents, so long as the individuals actually involved in making recommendations to the employer meet the qualifications outlined by the regulations. See, e.g., Ala. Admin. Code, r. 480-5-5-.01(1), (2);.02(70) (defining a "utilization review entity" as inclusive of not only private utilization-review vendors, but also carriers and employers); -.06(1); -.07(1) ("Utilization review may be performed by the insurance carrier, employer/agent, self-insured employer, or group self-insurance fund."); 08(4) and (5); and -.09(1) and (2).
Nothing in the regulations purports to require exhaustion by injured employees of the above-described procedures. As discussed above, the regulations consistently use permissive terms to describe movement from one level of review to another.[10]

*1052 B. The Ombudsman Program

The regulations also permit an "administrative appeal" in the form of a "review" by an ombudsman. Ala. Admin. Code, r. 480-5-5-.23(1)(b) ("Any adverse determination, resulting from the Peer Clinical Review (Third Level Clinical Review) process, may be submitted to medical dispute resolution at the written request of any party." (Emphasis added.)). Sorrells argues that, by statute and by practice, review by an ombudsman is an optional process for resolving disputes, not a required administrative remedy that must be exhausted before judicial redress can be sought. Nothing in the statute indicates that the Legislature intended to delegate to ombudsmen the authority to make binding decisions and to require employees to await the outcome of both utilization review and the ombudsman-review process before employees may exercise their statutory right to judicial relief.
As previously noted, § 25-5-293(g) and (k) both indicate that employers and self-insurers may conduct utilization reviews, but limit their authority to refuse payment on medical-necessity grounds to determinations conducted in compliance with the regulations contemplated by § 25-5-293(k). Neither subsection (g) nor subsection (k) makes any reference to the use of a Department of Industrial Relations' ombudsman as part of a medical-necessity-determination process. No delegation to the Department of Industrial Relations of authority to make "decisions" with respect to medical necessity is found in either of these subsections. Neither of these provisions makes participation in a Department of Industrial Relations program a prerequisite to seeking judicial relief under the Act.[11]
The main statutory provisions creating and describing the function of ombudsmen are Ala.Code 1975, §§ 25-5-290 through -292 (Act No. 92-537, Ala. Acts 1992, §§ 37-39). The Alabama Legislature provided in these sections for a voluntary, nonbinding mediation process through the use of "ombudsmen." The primary purpose of this ombudsman program is to facilitate the resolution of disputes *1053 involving the workers' compensation laws. Section 25-5-290 specifically requires the Department of Industrial Relations to establish an ombudsman program to assist injured or disabled employees, persons claiming death benefits, employers, and other persons in protecting their rights and in obtaining information available under the workers' compensation law. Ala.Code 1975, § 25-5-290(a). Ombudsmen appointed to fulfill this duty are mainly employed to conduct what are known as "benefit-review conferences." See generally Ala.Code 1975, § 25-5-290(b) and (f).
A "benefit-review conference" is defined in Ala.Code 1975, § 25-5-291, as "a nonadversarial, informal dispute resolution proceeding designed," among other things, to explain to the parties their rights, to aid the parties in evaluating their claims, and to "[m]ediate and resolve disputed issues by mutual agreement of the parties." Benefit-review conferences "shall be held only by agreement of the employer and employee and shall not be deemed mandatory." Ala.Code 1975, § 25-5-290(e); see also § 25-5-290(b). Consistent with the purpose of benefit-review conferences, Ala. Code 1975, § 25-5-290(c) and (e), describe the qualifications and training necessary for one to serve as an ombudsman and require only that ombudsmen "be Merit System Employees" and "demonstrate familiarity with the Workers' Compensation Law," and "be trained in the principles and procedures of dispute mediation." In contrast to the nurses and physicians who make recommendations to the employer in the first, second, and third clinical levels of the utilization-review process, ombudsmen need have no particular medical expertise nor medical qualifications; nor is an ombudsman required to have any legal training, except as described above. Furthermore, Ala.Code 1975, § 25-5-290(f), provides that "[i]n conducting benefit review conferences, the ombudsman ... [m]ay not take testimony ... [and] [m]ay not make a formal record."
The only regulation that describes in any detail the role of Department of Industrial Relations ombudsmen is Rule 480-5-1-.08. Consistent with its title, this regulation pertains only to "policies and procedures for mediation of workers' compensation disputes by ... ombudsmen." (Emphasis added.) Like § 25-5-290(e), this regulation conditions the use of the mediation process on the willingness of both parties to participate in it and makes it clear that a mediator has no authority to force a settlement. Consistent with statutory requirements, the regulation contemplates an informal proceeding with no stenographic record. See, e.g., Ala. Admin. Code, r. 480-5-1-.08(9).
In the context of the foregoing statutes and regulations, Ala.Code 1975, § 25-5-77(i), provides that "[a]ny party, including a health care provider, is entitled to a review by an ombudsman of medical services that are provided or for which authorization of payment is sought" under certain conditions. (Emphasis added.) While § 25-5-290 places clear limits on ombudsmen and the procedures they may employ, at least in the context of benefit-review conferences, nothing in § 25-5-77(i) nor any other statute explains the nature of this "review." The only grant of procedural authority for an ombudsman that is expressed in § 25-5-77(i) is the power to "consult with an independent medical expert for the purpose of obtaining advice and consultation on the resolution of any issue involving medical practice." Ala. Code 1975, § 25-5-77(i)(5).
The only other statute or regulation that describes any role for a Department of Industrial Relations ombudsman as part of an extrajudicial resolution of a medical-necessity controversy is Rule 480-5-5.23(1)(b)(I). This regulation provides that

*1054 "[a]ny adverse determination, resulting from the Peer Clinical Review (Third Level Clinical Review) process, may be submitted to medical dispute resolution at the written request of any party. Notice shall be given to all parties and the dispute may be decided by an Ombudsman after an informal hearing and/or an examination of the record. If the parties agree, the dispute may be presented to an Ombudsman for an alternative dispute resolution hearing through the mediation process. Decisions shall be rendered within 60 days of a hearing."

(Emphasis added.) No provision is made for the ombudsman to receive additional testimony or other evidence. Nor does this regulation appear to contemplate any further development of "the record," but only an "examination of the record," apparently meaning the employee's existing medical records. No explanation is given of what difference, if any, is intended by the terms "medical dispute resolution" and "alternative dispute resolution." Although there is a reference to "hearings" in connection with both processes, such a hearing obviously was not considered by the drafter as inconsistent with "the mediation process," and "decisions" from either process are to be rendered within 60 days of a "hearing." Rule 480-5-5-.23(1)(b)2., Ala. Admin. Code, appears to contemplate that the procedures outlined in Rule 480-5-5.23(1)(b)1. will not necessarily resolve the medical dispute. Rule 480-5-5-.23(1)(b)2. provides, in its entirety, as follows:
"A party to a medical dispute that remains unresolved after a review of medical services has been accomplished pursuant to Code of Ala.1975, § 25-5-77(i), may petition the circuit court for relief. Medical dispute resolution through mediation in the Ombudsman Program is not a prerequisite to petitioning the circuit court for ruling."
As noted at the outset of this discussion, if the Legislature intended for the utilization-review process to end in a binding decision by an ombudsman acting as a tribunal, rather than as a mediator, it certainly failed to clearly say so in the statute. Likewise, if the Department of Industrial Relations intended the ombudsman to act as such a tribunal, rather than as a mediator, it certainly fell well short of explaining this clearly. Thus, one commentator has summarized Rule 480-5-5-.23(1)(b) as providing as follows:
"An adverse decision regarding medical necessity shall be subject to administrative appeal at the request of any party by filing a letter of request with the Workers' Compensation Division. The appeal will be submitted to medical dispute resolution or alternative dispute resolution overseen by an ombudsman. Alternatively, without awaiting mediation of the dispute, a party may petition the circuit court for relief."
2 Terry A. Moore, Alabama Workers' Compensation § 17:28, p. 46 (Supp.2001) (footnote omitted; emphasis added).

IV. The Exhaustion Doctrine

While § 25-5-293(k) thus limits the right of an employer to refuse payment for medical treatments the employer does not consider to be reasonably necessary, the language of § 25-5-293(k) does not place limits on an employee or his right to receive reasonably necessary treatment, nor on the employee's concomitant right to vindicate his treatment right in court. The employee's right to reasonably necessary medical treatment is not a right that derives in any manner from the provisions of § 25-5-293(k) or the regulations promulgated thereunder. The employee's rights are not rights that arise exclusively, or in the first instanceor at allfrom some favorable administrative adjudication contemplated by § 25-5-293(k). Indeed, *1055 not only does § 25-5-293(k) not provide that an employee's right to reasonably necessary medical treatment is granted in the first instance by some administrative adjudication, § 25-5-293(k) does not provide for any involvement of by an administrative agency or governmental body in establishing that right. As discussed above, the employee's rights are rights that are granted directly to the employee, in every case, by legislative enactment: § 25-5-77(a). The provisions of § 25-5-293(k) quite simplyand quite plainlyimpose a condition only on an employer's right to refuse payment for a treatment to which the employee would otherwise be entitled under § 25-5-77(a). In other words, while § 25-5-293(k) embodies a restriction upon the employer's dispute rights, it is not the source of the employee's treatment right.

A. Application of the Doctrine to Adjudication of Disputes by Governmental Agencies

The doctrine of exhaustion of administrative remedies applies to the adjudication of disputes by governmental agencies and bodies. The doctrine has been articulated as follows: "The doctrine of exhaustion of administrative remedies relates to the withholding of judicial relief on a claim or dispute cognizable by an administrative body until the administrative process has run its course. It applies when a claim is cognizable in the first instance by the administrative agency alone." 73 C.J.S. Public Administrative Law and Procedure § 38, p. 445 (1983) (footnote omitted; emphasis added). "The rule which forbids resort to the courts by litigants before they have exhausted available administrative remedies applies only to private persons who have the right to resort to an administrative tribunal for relief." Id. at p. 452 (footnote omitted; emphasis added). "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts." 2 Am. Jur.2d Administrative Law § 505, p. 490 (1994) (emphasis added).
In Fraternal Order of Police, Strawberry Lodge # 40 v. Entrekin, 294 Ala. 201, 314 So.2d 663 (1975), our Supreme Court stated the rule of exhaustion as follows:
"We have adopted the doctrine of exhaustion of administrative remedies. It requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted."
294 Ala. at 209-10, 314 So.2d at 670 (emphasis added). In City of Huntsville v. Smartt, 409 So.2d 1353 (Ala.1982), our Supreme Court stated that "Entrekin approved the `exhaustion of administrative remedies' doctrine found in United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), which applies `where a claim is cognizable in the first instance by an administrative agency alone.'" 409 So.2d at 1357 (emphasis added). In Newman v. Town of Falkville, 652 So.2d 757 (Ala.1994), the Alabama Supreme Court stated the rule as follows: "[A] party is required to explore and exhaust all available administrative remedies before challenging an agency's actions in the courts." 652 So.2d at 759 (emphasis added).
Consistent with the foregoing articulations of the exhaustion rule as a rule applicable to administrative agencies and governmental bodies are the purposes of the rule:
"Exhaustion is generally required as a matter preventing premature interference with agency processes, so that the agency may: (1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise ...; and (3) compile a record *1056 which is adequate for judicial review. In addition, an agency has an interest in discouraging frequent and deliberate flouting of the administrative process.
"Thus, the exhaustion doctrine does not preclude, but rather defers, judicial review until after the expert administrative body has built a factual record and rendered a final decision."
2 Am.Jur.2d Administrative Law § 505 (1994) (emphasis added).
Insofar as an ombudsman's review of the decisions made by an employer following the utilization-review process, the ombudsman obviously is not correcting his or her "own errors." Moreover, neither the nurses nor the physicians who are part of the utilization-review process, nor the ombudsman, all of whom merely review the employee's existing medical records, ever will have seen, touched, or even talked with the patient; they are part of a cost-containment process. Compared to a qualified, treating physician who has seen and touched and talked with the patient, they provide less "experience and expertise" as to the substantive issue of what treatment for this particular patient is reasonably necessary. Finally, as noted, the administrative process at issue uses the same medical records that would be presented to the circuit court in the absence of an exhaustion requirement and therefore does not contribute to the "compil[ing] of a record which is adequate for judicial review." The need to defer judicial review "until after [an] expert administrative body has built a factual record" simply does not apply with respect to the procedures at issue in this case.
"Closely related to the above reasons [for requiring exhaustion] is a notion peculiar to administrative law. The administrative agency is created as a separate entity and invested with certain powers and duties. The courts ordinarily should not interfere with an agency until it has completed its action, .... As Professor Jaffe puts it, `[t]he exhaustion doctrine is, therefore, an expression of executive and administrative autonomy.'"
McKart v. United States, 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (footnote omitted). Executive branch/administrative autonomy is not implicated by the private utilization-review process contemplated by § 25-5-293(k).
In Terminato v. Pennsylvania National Insurance Co., 538 Pa. 60, 645 A.2d 1287 (1994), the Pennsylvania Supreme Court addressed the issue whether an insured must seek reconsideration of an adverse peer-review decision before initiating an action in court to recover medical benefits under an automobile-insurance policy. A Pennsylvania statute required automobile insurers to contract with a "peer review organization" ("PRO") to evaluate the necessity of medical treatment provided to an individual injured in an automobile accident when the insurer wished to challenge the reasonableness and necessity of the treatment. The Pennsylvania Supreme Court held:
"The doctrine of exhaustion of administrative remedies has no application to the peer review procedure. A peer review organization is not an administrative agency, a court of record, or a tribunal authorized to resolve disputes arising out of an automobile insurance policy.
"`A PRO is similar to an arbitration panel in that it is neither a court of record nor an administrative agency. However, a PRO is significantly dissimilar from an arbitration panel in that the latter is selected by both parties at the time the dispute arises and the former is a body established by a state or local professional society *1057 and selected solely by the insurer before the dispute arises.'"
538 Pa. at 66, 645 A.2d at 1290 (citation omitted).
While concluding that the exhaustion doctrine did not apply to a privately conducted peer-review process, the Terminate) court also addressed the insurer's argument that the PRO performed a fact-finding function sufficiently akin to that of an administrative agency that the Pennsylvania statute providing for peer review should be construed consistent with the doctrine of exhaustion of remedies. The peer-review process at issue in Terminate, like the peer-review process at issue in the present case, was designed to assist the insurer in determining whether it would choose to deny the claim of an insured. The Pennsylvania Supreme Court therefore rejected the insurer's argument:
"The peer review process is designed to assist the insurer in determining whether to deny the claim of an insured based upon an assessment of a medical professional. The PRO does not accept and review conflicting medical evidence proffered by an insured or provider as part of the process. Unlike an administrative agency, a PRO simply lends its expertise to an insurer and has no statutory authority to resolve disputes.
"Only the insurer participates in the peer review process.[[12]] This fact alone rebuts Pennsylvania National's contention that a PRO should be entitled to the judicial deference afforded to administrative agencies. The detachment and neutrality required of a fact-finder is conspicuously absent in the contractual relationship between a PRO and an insurer.
"`A PRO is not a neutral body. While a PRO cannot be owned by or be otherwise affiliated with the insurance company ...,[[13]] the law provides for the insurance company to select the PRO that will review the claim. The insurance company initially pays the PRO for its services. The insured plays no role in the selection process.... [T]he PRO does not have the characteristics of an independent body for which the Legislature would seek judicial deference.'"
538 Pa. at 68, 645 A.2d at 1291.
While the "characteristics" of Alabama's workers' compensation peer-review process may or may not be identical in every respect to those under review in Terminato, in every respect, the essential attributes of both processes are the same. The peer-review process in the case at bar is statutorily created as a vehicle by which the employer may, if it elects, deny an otherwise statutorily granted right. It is a tool of the employer. As one commentator has explained:
"Alabama's utilization review procedures do not give the employee notice and an opportunity to be heard on the issue of the reasonableness or necessity of medical treatment prior to a decision to deny treatment. Rather, the rules and regulations from the Department of Industrial Relations involve only the employer, the health care provider, and the reviewing entity until after the decision to deny has been made." *1058 2 Terry A. Moore, Alabama Workers' Compensation § 17:24.50 p. 11 (Supp. 2001).[14] Indeed, an employer in Alabama may even use its own employees to conduct the review process. Utilization review does not result in a decision by an administrative agency, but rather a recommendation to the employer. Even if that recommendation is to deny a given treatment, the decision whether to pay for or to deny payment for that treatment still remains with the employer. "[I]t is private employers, not the State of Alabama, who deny medical treatment pursuant to the utilization review process." Id. at p. 10.

B. Application of the Doctrine Where a Right is Provided Exclusively, or in the First Instance, by an Administrative Process

Where a right exists, if at all, only as a product of a favorable outcome in some administrative process, it is only logical, and the exhaustion doctrine implicitly recognizes, that all steps of that administrative process must be completed before it is known whether the right being sought has been granted or denied. As previously noted, the exhaustion doctrine has been said to apply "when a claim is cognizable in the first instance by the administrative agency alone." 73 C.J.S. Public Administrative Law and Procedure § 38, p. 445 (1983) (emphasis added). In stating the rule that has been adopted in Alabama, the Supreme Court in Entrekin explained that "[w]e have adopted the doctrine of exhaustion of administrative remedies. It requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted." 294 Ala. at 209-10, 314 So.2d at 670 (emphasis added). As the Supreme Court also explained in City of Huntsville v. Smartt, "Entrekin approved the `exhaustion of administrative remedies' doctrine found in United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), which applies `where a claim is cognizable in the first instance by an administrative agency alone.' 409 So.2d at 1357 (emphasis added).
Under Alabama's Workers' Compensation Act, an employee's right to reasonably necessary medical treatments derives, in the first instance, directly from the Act, specifically, § 25-5-77(a). The direct grant of that right to the employee is underscored by the last sentence of § 25-5-77(a), which extends directly to the employee, by statute, the right to seek judicial confirmation of his or her right to medical treatment in the event the employer refuses payment. The right to receive reasonably necessary medical treatment in any given case, therefore, is not a right that exists only if an administrative agency in its discretion elects to extend it to the employee. Under Alabama's Workers' Compensation Act, § 25-5-293(k), that right may be denied as a result of that administrative process, but it does not derive from that process, much less derive from it "in the first instance."
*1059 In Terminate, the Pennsylvania Supreme Court also reasoned that "[w]here the Legislature provides a statutory remedy [other than the courts] that is mandatory and exclusive, the general rule is that a court is without power to act. No jurisdictional issue is presented, however, where a statutory remedy is permissive or alternative." Terminato, 538 Pa. at 69, 645 A.2d at 1291. Nothing in Alabama's Workers' Compensation Act or any applicable regulation makes the administrative process at issue mandatory or exclusive for the employee; the "appeal" from one level to another is, in every instance, described with permissive terminology.[15]
In the present case, the employee's treating physician, who (pursuant to the employer's authorization) actually examined the employee, recommended a particular surgical procedure (shoulder surgery) as medically necessary. The employer, however, refused to pay for this treatment, basing this refusal on the result of its "utilization review." The employee petitioned the trial court under § 25-5-77(a) for an order directing the employer to authorize the treatment, and the trial court issued an order doing so.
The employer contends that the employee did not have the right to petition the trial court for approval of the procedure, but was instead required to proceed through a "third-level clinical review" and a subsequent review by an ombudsman. As previously noted, however, when the Legislature adopted Article 11 of the state's workers' compensation law (Title 25, Chapter 5, Ala.Code 1975), which article governs workers' compensation ombudsmen, it left intact § 25-5-77(a), Ala. Code 1975, which states that "[a]ll cases of dispute as to the necessity and value of the [medical, surgical, or hospital] services shall be determined by the tribunal having jurisdiction of the claim of the injured employee for compensation" (emphasis added). If the Legislature, in enacting the 1992 amendments to the state's workers' compensation laws, had intended for employees to be required to pursue "third-level clinical review" and review by an ombudsman before exercising their express statutory right to seek judicial relief, it failed to manifest that intent. The Legislature merely directed the Department of Industrial Relations to adopt utilization-review procedures for use by the employer or its insurer, if either elects to conduct precertification reviews. The Legislature could have amended or repealed the above-quoted portion of § 25-5-77(a) or otherwise expressed its intention that employees not seek judicial review from adverse employer determinations of medical necessity until after the exhaustion of administrative review mechanisms. It did not do so.
Because the Legislature did not amend or repeal the pertinent provisions of § 25-5-77(a), the relief sought by the employee in the trial court (i.e., that the employer be directed to pay for her shoulder surgery, a medical procedure prescribed by the employes's *1060 authorized physician) was not cognizable only in the administrative review process. Nor was this relief "`cognizable in the first instance by an administrative agency alone.'" City of Huntsville v. Smartt, 409 So.2d at 1357 (emphasis added).

C. Additional Considerations

A number of other considerations buttress the conclusion that the exhaustion of an employer's utilization-review procedures is not appropriate, and was not intended, as a prerequisite to the exercise by an employee of his right to judicial relief in § 25-5-77(a). First, if a physician selected from a panel of four physicians to provide a second opinion under § 25-5-77(b), Ala.Code 1975, opines, after actually seeing, talking with, and examining the employee, that a treatment recommended by the initial authorized treating physician is not reasonably necessary, and the employer elects, on the basis of that second opinion, to deny payment for that treatment, the employee has an immediate right at that point to seek a judicial determination as to whether that treatment is in fact reasonably necessary. Ala.Code 1975, § 25-5-77(a). The construction of § 25-5-293 and the regulations that is urged by the employer in this case, however, would yield the incongruous result that an employer could deny payment for a treatment recommended by an initial treating physician solely on the basis of an opinion provided by a physician who has never seen, talked with, or touched the patient, and the employee in that case would have no right to immediately pursue a judicial determination. Instead, the employee would be forced to pursue an administrative process that could, by itself, postpone the employee's initiation of judicial proceedings and/or the employee's ultimate receipt of needed medical treatment by up to 90 days.[16]
Second, § 25-5-293(k) would have permitted employers to engage in medical necessity precertification even if the Director of the Department of Industrial Relations had never acted to promulgate any regulations under § 25-5-293(k). Specifically, the statute provides that, before adoption of formal regulations, employers could have made such determinations so long as they did so "in a manner that [was] consistent with similar practices of a majority of commercial insurance companies." No other guidance or information is provided as to what those "similar practices" might have been. We view it unlikely, at best, that the Legislature intended for such uncertain and unspecified procedures to constitute a prerequisite to the employee's right clearly stated in § 25-5-77(a) to seek judicial relief.
Indeed, if employers and insurers were free before the adoption of regulations to have determined on their own what practices they would have considered to be "consistent with similar practices of a majority of commercial insurance companies," this undoubtedly could have led to different procedures being followed by different employers and insurers. In fact, had formal regulations never been adopted, § 25-5-293(k) would have enabled such different procedures to continue to this day. The unlikelihood that the Legislature intended for the exhaustion of privately administered medical-necessity-determination processes to be a prerequisite to seeking judicial relief is thus highlighted by the fact that different employees could have been subjected to different precertification procedures, depending on who their employer was.
*1061 Further belying the notion that the Legislature intended precertification utilization review to be a prerequisite to seeking judicial relief, the Legislature specifically stated in § 25-5-293(g) that "[a]ll insurers, claims adjusters, self-administered employers, and any entity involved in the administration or payment of workers' compensation claims may, but are not required to, implement utilization review and bill screening." (Emphasis added.) Similarly, § 25-5-293(k) explains that, if an employer chooses to engage in medical-necessity determinations, those determinations must be conducted subject to the conditions outlined in that subsection. Even the regulations themselves make it clear that some employers may choose to engage in utilization-review and medical-necessity determinations, while others may not. Ala. Admin. Code, r. 480-5-5-.01(7), states that "[u]tilization review ... may be performed at the option of the employer." We cannot conclude that the Legislature would have intended that the clearly prescribed right to seek judicial relief would be postponed for some employees for up to 90 days, while not at all for other employees, depending merely on whether they work for an employer who has chosen to engage in precertification utilization review. Such a disparate impact on similarly situated claimants would have been inconsistent with the policies and purposes of the exhaustion doctrine.
Furthermore, § 25-5-293(k)'s limitation on medical-necessity determinations applies only to "the services of physicians." While the Legislature certainly was free to so limit the application of § 25-5-293(k), again it would be incongruous for the Legislature to have intended to require employees to exhaust an administrative-review process that may last up to 90 days before being able to seek the aid of a court to procure the services of a physician, while being able to proceed immediately to obtain a court order for the services of therapists, nurses, and other non-physician healthcare providers.

D. E-Town Quarry v. Goodman

The Court of Appeals of Kentucky recently addressed the same issue that is now before this court. The initial adjudication of a workers' compensation dispute in Kentucky is handled by an administrative law judge ("ALJ"), sometimes with the assistance of an arbitrator. Appeals are made to a workers' compensation board and then to the Kentucky Court of Appeals. In E-Town Quarry v. Goodman, 12 S.W.3d 708 (Ky.Ct.App.2000), the employer's insurer refused payment for continued psychiatric treatments based upon a recommendation received through an administrative utilization-review procedure. When the employee disputed this refusal and returned to an ALJ to seek an adjudication that the treatments at issue were in fact necessary and appropriate under Kentucky law, the employer contended that the employee first should have exhausted his or her administrative appeal rights. In rejecting this argument, the Kentucky Court of Appeals persuasively reasoned as follows:
"E-Town argues that in order to effectuate the purpose of the Utilization Review process, an employer must be able to rely on the opinion and recommendation of the reviewer when the employee fails to appeal or contest that opinion.
"In rejecting E-Town's position, the Board stated in its opinion as follows:
"`The utilization review regulation is created pursuant to KRS 342.020. It is designed to help the parties resolve medical expense issues without the need to resort to litigation. It is not designed nor authorized to replace the responsibility of Arbitrators and Administrative Law Judges to decide medical disputes that are presented to them.... There is nothing in the regulation *1062 nor the statute that accords special weight to evidence from a UR [Utilization Review] doctor once the matter is brought to adjudication. Even if the regulation attempted to create such an impact, it would be in conflict with the adjudicatory rights established by the Kentucky Legislature, which in workers' compensation rests solely with Arbitrators and Administrative Law Judges. See KRS 342.270 and KRS 342.275. Utilization review was not intended as a sword for the skewering of medical benefits issues but rather was designed to provide an opportunity to all parties in a medical fee question to avoid the necessity of [a] lengthy litigation process. It was also created in an effort to afford employers and their carriers an opportunity to thoroughly evaluate medical expenses, including seeking an opinion from a physician before finding themselves in the position of having to challenge a medical bill within thirty days as is required by KRS 342.020.'[[17]]
"In a separate concurring opinion, Board Member Stanley noted that in Section 1 of 803 KAR 25:190, the definitions of the terms `Utilization Review' and `Denial' refer to the purpose of the review procedure as providing recommendations for payment of medical bills. He further stated:
"The purpose of the utilization review program is to manage and assess patient care through the assessment of the medical necessity and appropriateness of medical care for purposes of making `recommendations' to various medical providers. Nothing in this regulation or its enabling statute, KRS 342.035, makes utilization review findings conclusive on an Arbitrator or Administrative Law Judge. By express regulatory definition, utilization review is intended as an informal method for proposing recommendations with regard to the necessity and reasonableness of medical treatments.'
"After reviewing 803 KAR 25:190 and KRS 342.035, we agree with the Board that exhaustion of the Utilization Review administrative procedure is not required in order to make medical costs compensable under the workers' compensation law. While the Utilization Review regulation requires that the employer provide a `reconsideration process' for appeal of an initial decision by a reviewer, there is nothing in the regulation mandating exhaustion or giving the opinion of a reviewer under the Utilization Review presumptive weight in a subsequent medical fee dispute for failing to seek reconsideration."
12 S.W.3d at 710-11 (footnote omitted).
After discussing the interpretation of the Kentucky regulations by the workers' compensation board, the Kentucky Court of Appeals concluded as follows:
"As the Board's opinion indicates, failure to engraft an exhaustion requirement on the Utilization Review process would not defeat the purpose of the procedure. The Utilization Review process is designed to provide additional expert opinions on medical treatment rather than resolve disputes through an adjudicatory procedure. As such, applying a procedural bar for failure to complete the review process would be inappropriate."
12 S.W.3d at 711.
The essence of the Kentucky court's reasoning is equally applicable to the procedures which an Alabama employer must satisfy in order to refuse pre-certification *1063 for a medical treatment. Failure to engraft an exhaustion requirement on the utilization review and ombudsman procedures would not defeat the purpose of these procedures. The Legislature has failed to require such exhaustion, and a judicial engrafting of such a requirement would be in tension with the employee's rights under § 25-5-77(a) and at odds with well-established principles for doing so.

V. Conclusion

In order to be entitled to a writ of mandamus directing a trial court to vacate an order, a party must show, among other things, a clear right to have that order vacated. See, e.g., Ex parte Edwards, 727 So.2d 792, 794 (Ala.1998). In light of the foregoing, no such legal right exists in the present case. We therefore deny SEAMC's petition for the issuance of a writ of mandamus.
PETITION DENIED.
YATES, P.J., and CRAWLEY, J., concur.
THOMPSON and PITTMAN, JJ., dissent.
THOMPSON, Judge, dissenting.
The Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975, provides that an employer is not required to provide all medical treatment for an injured employee; it must provide only that medical treatment that is reasonable and medically necessary. § 25-5-77(a), Ala.Code 1975; Ex parte Smitherman Bros. Trucking, Inc., 751 So.2d 1232 (Ala.1999); Acustar, Inc. v. Staples, 598 So.2d 943 (Ala.Civ.App. 1992). SEAMC has disputed the medical necessity of the proposed surgery to Sorrells's shoulder. The term "medically necessary" is not defined in the Workers' Compensation Act. SEAMC contends that the determination whether a proposed medical service is a medical necessity may be made through a "utilization-review" process authorized by Alabama's Workers' Compensation Act and governed by the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975 (hereinafter "the AAPA"). I agree, and I would grant the petition and issue the writ. Therefore, I dissent.
Section 25-5-77(a), Ala.Code 1975, provides, in part, that "[a]ll cases of dispute as to the necessity and value of the services shall be determined by the tribunal having jurisdiction of the claim of the injured employee for compensation." In 1992, the Alabama Legislature amended the Workers' Compensation Act to create the Workers' Compensation Medical Services Board. See Act No. 92-537, Ala. Acts 1992 (codified at § 2-5-310 et seq., Ala.Code 1975). The Act proposing that amendment provided, in part:
"It is the intent of the Legislature that the Department of Industrial Relations and the Alabama judicial system shall administer the Alabama Workers' Compensation Act to provide a workers' benefit system to insure the quick and efficient payment of compensation and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the Alabama Workers' Compensation Act. It is the specific intent of the Legislature that workers' compensation benefit claim cases be decided on their merits. The Alabama Workers' Compensation Act is remedial in nature and should be liberally construed to effectuate the intended beneficial purposes. However, even a liberality of construction does not abrogate the measure of proof or sufficiency of evidence.
"It is also the intent of the Legislature in adopting this workers' compensation scheme to address difficulties in the current scheme that are producing a debilitating and adverse effect on the *1064 state's ability to retain existing industry and attract new industry. The Legislature finds that the current Workmen's Compensation Law of Alabama and other means of compensation or remedy for injury in the workplace has unduly increased cost to employers in the state, driven away jobs, and produced no concomitant benefit. There is a total absence of any reliable evidence that the current act has resulted in fewer injuries on the job, and a considerable body of evidence that any added benefit to the worker is significantly offset by the resulting reduction in job opportunities.
"The Legislature has reviewed substantial evidence related to various types of cumulative physical stress disorders, cumulative trauma disorders and certain `natural aging' disorders, including carpal tunnel syndrome, repetitive motion syndrome, and even back and neck infirmities that result from gradual deterioration or the natural process of aging. The Legislature has concluded that it is extremely difficult for the adjudicator of fact to determine whether these disorders are related to work or whether they result from some congenital defect, aging processes, or simply the routine activities of daily living.
"These claims also account for a substantial percentage of the workers' compensation claims in this state and are one of the contributing causes of the current workers' compensation crisis facing this state.
"It is the finding and expressed intent of the Legislature that the existence of a fair and affordable workers' compensation system within the State of Alabama materially contributes to the economic growth and prosperity of the state and all its citizens. It is the further finding of the Legislature that the provision of quality medical services to employees injured in the workplace at a reasonable and fair cost to employers is an important part of a workers' compensation system. The establishment of a Workers' Compensation Medical Services Board as constituted in this amendatory act is considered by the Legislature to be the most appropriate mechanism for insuring that high quality medical services are provided in a cost-effective manner to employees injured in the workplace."

Act No. 92-537, § 1 (emphasis added).
The Workers' Compensation Medical Services Board exercises general supervision over matters regarding the provision of medical services to workers' compensation claimants. § 25-5-312, Ala.Code 1975. Section 25-5-293(g), Ala.Code 1975, provides, in part, that entities involved in the administration or payment of workers' compensation benefits "may, but are not required to" create a utilization review process. Among the responsibilities of the Workers' Compensation Medical Services Board is the duty to develop and implement guidelines for the providing of medical services and to "study, develop, and recommend ... uniform medical criteria and policies for the conduct of utilization review, bill screenings, and medical necessity determinations for use by insurance carriers, self-insurers, and claims administrators." § 25-5-312(1), Ala.Code 1975. Section 25-5-293(k), Ala.Code 1975, provides that the Workers' Compensation Medical Services Board "shall" promulgate its guidelines or regulations pursuant to the requirements of the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975.
The regulations promulgated by the Workers' Compensation Medical Services Board pursuant to the foregoing authority are set forth at Chapter 480-5-5 of the Alabama Department of Industrial Relations Workers' Compensation Administrative Code, which contains the regulations *1065 governing utilization management and bill screening.
Section 25-5-293(g), Ala.Code 1975, provides that entities that administer the payment of workers' compensation benefits may implement utilization-review procedures. The language of § 25-5-293(k), Ala.Code 1975, provides that such utilization reviews and medical-necessity determinations "shall only be conducted" pursuant to the regulations or guidelines adopted by the Workers' Compensation Medical Services Board. The utilization-management and bill-screening regulations cite § 25-5-293, Ala.Code 1975, as their "statutory authority." Ala. Admin. Code, Chapter 480-5-5-.01.
A fundamental rule of statutory construction is to "ascertain and give effect to the intent of the legislature in enacting the statute." IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). Words of a statute are to be given their "natural, plain, ordinary, and commonly understood meaning[s]." Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991). If the language of the statute is clear and unambiguous, the Legislature's clearly expressed intent must be given effect. Ex parte Prudential Ins. Co. of Am., 721 So.2d 1135 (Ala. 1998).
Our supreme court has recognized that pursuant to the regulatory provisions set forth at Ala. Admin. Code, Chapter 480-5-5, an employer has a right to oversee and manage an injured employee's medical care. Ex parte Smitherman Bros. Trucking, Inc., 751 So.2d 1232, 1236 (Ala.1999). In Ex parte Smitherman Bros. Trucking, Inc., the court discussed the application of Chapter 480-5-5, with regard to the manner in which an employer conducted a medical-necessity determination. See 751 So.2d at 1233 n. 2. In that case, the employer, Smitherman Brothers, petitioned for a writ of mandamus directing the trial court to vacate its order forbidding Smitherman Brothers' case manager from verbally communicating with the employee's medical provider. In concluding that § 25-5-77 does not prohibit verbal communications or contact between an employer's case manager and the employee's physicians or medical providers, the court stated:
"[Section 25-5-77(a), Ala.Code 1975,] places an affirmative duty on an employer to pay for an employee's reasonably necessary medical expenses. Implicit in this provision is an employer's right to oversee that treatment so as to ensure not only that the employee receives the proper treatment, but also that that treatment is reasonably necessary and that it is provided in the most efficient and cost-effective manner, without compromising the quality of care."
Ex parte Smitherman Bros. Trucking, Inc., 751 So.2d at 1233. In determining the extent of Smitherman Brothers' right to "oversee" the provision of medical services to the injured employee, the court analyzed both the language of § 25-5-77 and the applicable regulatory provisions of Chapter 480-5-5. The court concluded that based on the applicable "statutory and regulatory provisions," Smitherman Brothers had demonstrated a clear legal right to the relief it sought; therefore, the court granted Smitherman Brothers' petition for a writ of mandamus. Ex parte Smitherman Bros. Trucking, Inc., 751 So.2d at 1236-37.
I conclude that the foregoing authority clearly authorizes an employer's adoption and use of a utilization-review procedure pursuant to the regulations promulgated by the Workers' Compensation Medical Services Board and set forth in Chapter 480-5-5. The next issue to be resolved is whether an injured employee must submit to his or her employer's utilization-review *1066 process as a prerequisite for seeking relief in a trial court from an unfavorable decision from the employer's denial of payment for requested medical services.
The utilization-management and bill-screening regulations provide a method of reviewing, among other things, the medical necessity of proposed medical treatment. The term "utilization review" is defined under those regulations as "[t]he determination of medical necessity for medical and surgical in-hospital, outpatient, and alternative setting treatments for acute and rehabilitation care" and "includes pre-certification for elective treatments." Ala. Admin. Code, § 480-5-5-.02(68). The regulations define the term "medical necessity" as follows:
"Services or supplies which are medically necessary to treat the work related illness or injury. To be medically necessary, services and supplies shall meet the following criteria: be consistent with the diagnosis and treatment of the work related illness or injury; be consistent with the standard of care for good medical practice; not be solely for the convenience of the patient, family, hospital, physician or other provider; be in the most appropriate and cost effective medical care setting as determined by the patient's condition; and have scientifically established medical value."
Ala. Admin. Code, § 480-5-5-.02(46).
The utilization-management and bill-screening regulations provide for multiple levels of review of the medical necessity of requested or proposed medical services for a workers' compensation claimant. The regulations provide that "any party" may request an administrative appeal of an adverse decision regarding medical necessity. Ala. Admin. Code, § 480-5-5-.23(1). Further review is available in the trial court. Id. See also § 41-22-20, Ala.Code 1975.
Section 25-5-293(k), Ala.Code 1975, clearly limits the application of the Chapter 480-5-5 regulations to utilization reviews, bill screening, medical-necessity determinations, and audits. That section also provides that those reviews or determinations "shall only be conducted" pursuant to the regulations or guidelines properly adopted by the Workers' Compensation Medical Services Board pursuant to the requirements of the AAPA. § 25-5-293(k). The utilization-management and bill-screening regulations themselves specifically define their own scope as applying only to permissive bill screenings and to utilization reviews. Ala. Admin. Code, § 480-5-5-.01. Thus, according to the clear language of § 25-5-293 and the stated scope of the regulations themselves, the utilization-management and bill-screening regulations subject only a limited set of disputes that might arise during the administration of an employee's claim for workers' compensation benefits to resolution under a utilization-review process. I believe that the regulations do not change a party's substantive rights under the Workers' Compensation Act, but rather dictate the manner in which some of the parties' rights under that Act may be determined.
In accordance with the utilization-management and bill-screening regulations, Chapter 480-5-5 of the Alabama Department of Industrial Relations Workers' Compensation Administrative Code, SEAMC implemented utilization-review procedures. SEAMC's utilization-review procedures were in effect when Sorrells sought authorization for the proposed surgery to her shoulder. In its brief filed in support of its petition for a writ of mandamus, SEAMC states that a licensed physician, pursuant to a "second level clinical review," determined that the proposed surgery for Sorrells's shoulder was not medically necessary. See Ala. Admin. Code, § 480-5-5-.07(4). In her motion filed in the trial court, Sorrells alleged that *1067 SEAMC's second-level clinical reviewer had determined that the condition of her shoulder would be best treated with physical therapy rather than with the proposed surgery. Based on the determination of its second-level reviewer, SEAMC denied Sorrells authorization for the proposed surgery. Rather than seek the "Peer Clinical Review (or Third Level Clinical Review)" available under SEAMC's utilization-review procedures implemented pursuant to Ala. Admin. Code, § 480-5-5.07(5), Sorrells immediately moved the trial court for an order requiring SEAMC to authorize and pay for the proposed surgery to her shoulder. SEAMC argues, and I agree, that before Sorrells could challenge in the trial court its determination that the proposed surgery was not medically necessary, Sorrells was required to submit to the utilization-review process it had implemented pursuant to Chapter 480-5-5.
In City of Auburn v. Brown, 638 So.2d 1339 (Ala.Civ.App.1993), the employee, Brown, suffered an on-the-job injury to his back. His authorized physician recommended surgery, but two other physicians recommended that he be treated with physical therapy. Brown requested authorization for the recommended surgery, but the employer refused to authorize that surgery. The employer filed a complaint in the trial court seeking to obtain a resolution of the parties' workers' compensation dispute. The trial court determined that Brown should make the decision regarding which recommended treatment he should receive; therefore, the trial court authorized Brown to seek treatment from any of the three physicians. This court affirmed, holding that "as a general rule, the employer may not dictate to the employee that he may not have the medical treatment recommended by his authorized, treating physician." City of Auburn v. Brown, 638 So.2d at 1341.
However, I do not find the holding of City of Auburn v. Brown, to be inconsistent with a requirement that a workers' compensation claimant take part in his or her employer's utilization-review process in order to resolve disputes over matters that involve the administration of workers' compensation benefits, such as a medical-necessity determination. The utilization-review process provides an employer with a method of ascertaining, among other things, the necessity of proposed medical services. The utilization-management and bill-screening regulations provide for administrative and judicial review of determinations made by an employer under its utilization-review procedures. See Ala. Admin. Code, § 480-5-5-.23. Further, the effective date of the utilization-management and bill-screening regulations promulgated by the Workers' Compensation Medical Services Board pursuant to § 25-5-293(k), Ala.Code 1975, was September 13, 1996, well after this court released its decision in City of Auburn v. Brown, supra. See Ala. Admin. Code (Dep't Ind. Rel.), Chapter 480-5-5. Also, in the two recent cases that discuss the "general rule" established by City of Auburn v. Brown, supra, there is no indication that the employers had utilization-review procedures in place, or that the employers based their refusals to pay for the requested medical treatments on determinations made pursuant to utilization-review procedures. See Ex parte Wal-Mart Stores, Inc., 794 So.2d 1085 (Ala.2001); Waffle House, Inc. v. Howard, 794 So.2d 1123 (Ala.Civ.App.2000). Therefore, the facts of those cases are distinguishable from a case in which an employer has implemented utilization-review procedures.
The language of the Workers' Compensation Act clearly dictates that the regulations formulated by the Board are subject to the AAPA. § 25-5-293(k) and § 25-5-312(6), Ala.Code 1975. The main opinion *1068 concludes that § 25-5-77(a) is inconsistent with a requirement that an employee exhaust any available administrative remedies provided under a utilization-review process, and that because the Legislature did not repeal that portion of § 25-5-77(a), Sorrells was not required to submit to the utilization-review process. I believe that when read together, the provisions of the Workers' Compensation Act, including § 25-5-77(a), dictate that an employee must take part in an employer's utilization-review process implemented pursuant to Chapter 480-5-5. See § 25-5-77(a), Ala. Code 1975; § 25-5-293(g) and (k), Ala. Code 1975; § 25-5-312(1), Ala.Code 1975.
All provisions of a statute must be given effect, and they must be construed in pari materia. Lambert v. Wilcox County Comm'n, 623 So.2d 727 (Ala.1993); Norandal USA Inc. v. State Dep't of Revenue, 545 So.2d 792 (Ala.Civ.App.1989).
"Prior statutes relating to the same subject matter are compared with the new provision; if it is possible by reasonable construction, both are construed so that effect is given to every provision in all of them. It is also possible to refer to subsequent enactments and amendments as an aid in arriving at a correct interpretation.
"Statutes for the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible.... However, it has been held where two statutes deal with the same subject matter, the more recent enactment prevails as the latest expression of legislative will."

Norman J. Singer, Statutes and Statutory Construction § 51.02 (6th ed.2000) (footnotes omitted; emphasis added). See also Swint v. State Alcoholic Beverage Control Bd., 628 So.2d 769, 772 (Ala.Civ.App. 1993)("[a] basic rule of statutory construction is that `[w]here two sections or provisions of an act are conflicting, the last in order of arrangement controls.'"). Further,
"The intent of the Legislature in enacting legislation determines which of the conflicting provisions in a statutory scheme applies. Hawley Fuel Corp. v. Burgess Mining & Constr. Corp., 291 Ala. 546, 283 So.2d 603 (1973). Courts ascertain the intent of the Legislature from the language contained in the statute, as well as from the reason and necessity for the statute and the goals the Legislature was seeking to accomplish in enacting the statute. McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417 (Ala.1992); Ex parte Birmingham Bd. of Educ., 601 So.2d 93 (Ala.1992)."

Department of Mental Health & Mental Retardation v. Bendolph, 808 So.2d 54 (Ala.Civ.App.2001) (emphasis added).
The provision contained in § 25-5-77(a) regarding submitting disputes pertaining to the necessity and value of medical services to the trial court for its resolution has been in place, in some form, since the inception of Alabama's laws governing workers' compensation. See Act. No. 245, Ala. Acts 1919; see also Act. No. 661, Ala. Acts 1939. The provisions of 25-5-77(a) can be said to conflict with the requirements of § 25-5-293 only in those cases in which an employer has implemented utilization-review procedures. In cases in which the employer has not implemented those procedures, § 25-5-77(a) provides a method for determining any disputes regarding the necessity or value of the medical treatment sought by the employee. Even if this court were to assume that § 25-5-77(a) conflicts with § 25-5-293 in those situations in which an employer has implemented utilization-review procedures, the most recent legislative enactment, or 25-5-293, controls. Norman J. Singer, Statutes and Statutory Construction, § 51.02; Swint v. Alcoholic Beverage Control Bd., 628 So.2d at 772.
*1069 Moreover, "if the various parts of an act can be harmonized, they will be construed so as to avoid an irreconcilable conflict." Kinard v. Jordan, 646 So.2d 1380, 1383 (Ala.1994). The two provisions can be harmonized by construing the utilization-review procedures authorized by § 25-5-293 as an administrative prerequisite to obtaining a determination of the dispute in the trial court pursuant to § 25-5-77(a) in those cases in which an employer has implemented such utilization-review procedures. Such an interpretation avoids any possible "irreconcilable conflict" in the two provisions. See Kinard v. Jordan, 646 So.2d at 1383. Given the foregoing, as well as the Legislature's clear statement of its purpose in enacting Act. No. 92-537, Ala. Acts 1992, which is set forth at the beginning of this writing, I conclude that this interpretation best reflects the intent of the legislature in creating the Workers' Compensation Medical Services Board, which it gave the authority to promulgate the utilization-management and bill-screening regulations.
Based on the foregoing, I would hold that § 25-5-293 of Alabama's Workers' Compensation Act authorizes the implementation of utilization-review procedures pursuant to the regulations set forth in the Alabama Department of Industrial Relations Workers' Compensation Administrative Code, Chapter 480-5-5, and that, as a prerequisite for seeking relief in the trial court, a workers' compensation claimant must submit to the utilization-review process implemented by his or her employer.
I note that Sorrells contends that requiring a workers' compensation claimant to submit disputes in matters regarding the administration of workers' compensation benefits, such as disputes regarding the medical necessity of a proposed medical service, to a utilization-review process will delay the worker's compensation claimant's ability to obtain medical treatment. Our Legislature's intent in authorizing the promulgation of the utilization-management and bill-screening regulations contained in Chapter 480-5-5, was to balance providing high-quality health-care services to workers' compensation claimants with the need to contain the costs of supplying those services. See § 25-5-293(g), Ala.Code 1975; Act No. 92-537, § 1, Ala. Acts 1992. The Legislature has enacted statutory guidelines governing the duties of and standards for the health-care professionals who conduct utilization reviews. See § 27-3A-1 et seq., Ala.Code 1975. Although Sorrells is correct that the use of the utilization-review process may temporarily delay medical services for some workers' compensation claimants, this court may not second-guess the Legislature's determination as to that issue. As our supreme court has stated, "it is for the Legislature, not [the appellate courts], to address these policy considerations." Ex parte Smitherman Bros. Trucking, Inc., 751 So.2d at 1237.
PITTMAN, J., concurs.
NOTES
[1] Sorrell's response to the petition for a writ of mandamus asserts that, before the dispute over treatment that existed in June 2001, Sorrells filed a motion on May 4, 2000, requesting the trial court to require SEAMC to "provide" certain surgery. According to her response, that motion became moot when SEAMC ultimately agreed to pay for that surgery.
[2] This standard is one of reasonable necessity, not absolute or strict necessity; this standard does not necessarily limit the parties to the single "best" treatment available. Nothing in the Act suggests that there can be only one "reasonably necessary" approach to treating a given patient and his or her injury or illness. Instead, the recommended treatment must fall within the parameters of what is reasonably necessary for a patient with the condition suffered by the employee. Alabama Administrative Code, r. 480-5-5-.02(46), provides that to be "medically necessary," services and supplies need only be "consistent with" the diagnosis and treatment of the illness or injury, "consistent with" the "standard of care for good medical practice," and "have scientifically established medical value." As a matter of statutory construction, as well as common sense, it undoubtedly is possible in many cases for more than one treatment alternative to fall within the realm of what would be "reasonably necessary" to effectively treat a given employee.
[3] "[T]he tribunal having jurisdiction of the claim of the injured employee for compensation," as referenced in § 25-5-77(a), is the circuit court. See Ala.Code 1975, § 25-5-81(a)(1).
[4] In most cases, an employee will not have a right to medical treatment not recommended by either the initial or second authorized physician. See Kimberly-Clark Corp. v. Golden. 486 So.2d 435, 437 (Ala.Civ.App.1986); United States v. Bear Bros., Inc., 355 So.2d 1133, 1137 (Ala.Civ.App.1978). However, where an employee has received recommendations from both the initial and the second authorized treating physicians in accordance with the procedures outlined in § 25-5-77(a), and the employee is able to prove that the treatment recommended by the authorized physicians does not fall within the parameters of what would be "reasonably necessary" to treat his or her injury or illness, but that another (unauthorized) physician has recommended a treatment that does fall within such parameters, nothing in the first or last sentences of § 25-5-77(a), nor our caselaw, prevents an employee from then proceeding to seek judicial vindication of his right to the latter treatment. See generally Bear Bros., 355 So.2d at 1138 n. 2 ("However, in appropriate instances, the employee may recover workmen's compensation benefits from his employer even though the employee has contracted for medical care from a source other than one provided by the employer. Among such instances are: (1) where the employer has neglected or refused to provide the necessary medical care; (2) where the employer has consented to the selection by the employee; (3) where notice of and request for alternative care would be futile; and (4) where other circumstances exist which justify the selection of alternative care by the employee. 99 C.J.S. Workmen's Compensation § 273; 82 Am. Jur.2d Workmen's Compensation § 391. See Industrial Indemnity Co. v. Industrial Acc. Comm'n, 188 Cal.App.2d 656, 10 Cal.Rptr. 566 (1961)." (Emphasis added.))

Likewise, in most cases, an employer will not have the right to refuse to pay for a medical treatment recommended by an authorized physician. Ala.Code 1975, § 25-5-77(a). However, where the employer can prove that the treatment recommended by the authorized physician is not "reasonably necessary," the employer will have no obligation under § 25-5-77(a) to pay for that treatment. Thus, one commentator cites only § 25-5-77(a) as sufficient authority for the proposition that an authorized physician's control over the course of an employee's medical treatment is subject to "the employer's right to dispute the reasonable necessity of the treatment." 2 Terry A. Moore, Alabama Workers' Compensation § 17:17, p. 34 (1998) (footnote omitted) (also explaining that "the employer must pay the costs of any reasonably necessary ... treatment recommended by the authorized physician" Id. at p. 33, 10 Cal. Rptr. 566 (footnote omitted; emphasis added)); see also id. at § 17:13, pp. 28-29 (1998) ("The employer must pay for the reasonably necessary medical treatment provided by the second physician or surgeon chosen [from a panel of four] by the employee." (Footnote omitted; emphasis added.)).
[5] City of Auburn, though decided in 1993, construed the Act as it existed before the 1992 amendments.
[6] In addition to the absence of any reference in City of Auburn to an issue regarding the reasonableness of either of the two treatments at issue, it should be noted that City of Auburn logically must be read as not involving any such issue. Otherwise, the employee would have had no right to choose between the "conflicting medical opinions." The statute clearly gives employees a right to receive only "reasonably necessary" medical treatments and imposes an obligation on the employer to pay only for "reasonably necessary" treatments. See 2 Terry A. Moore, Alabama Workers' Compensation § 17:17, pp. 33-34 (1998) (citing City of Auburn for the proposition that "[t]he employer may not limit the scope of the employee's treatment by refusing to pay for reasonably necessary medical treatment recommended by the [authorized] physician." (Emphasis added.)). See also Ex parte Smitherman Bros. Trucking, Inc., 751 So.2d 1232, 1233 (Ala.1999) ("[Section 25-5-77(a) ] places an affirmative duty on an employer to pay for an employee's reasonably necessary medical expenses." (Emphasis added.)).
[7] In his special writing concurring in the result in City of Auburn, Judge Thigpen explained that the general rule articulated in the main opinion in that casethat "`the employer may not dictate to the employee that he may not have the medical treatment recommended by his authorized, treating physician' "said more than was necessary under the facts and issue presented in that case. City of Auburn, 638 So.2d at 1342 (Thigpen, J., concurring in the result only). Judge Thigpen explained that the issue was not the role of the employer, but the role of the employee, in choosing between competing, qualified physicians. As Judge Thigpen reasoned, when an employee is "satisfied with the initial treating physician ... the employer lost all authority to withdraw authorization and to select another physician." Id. at 1342-43 (emphasis added). The broader issue of "whether an employer may dictate to an employee a course of treatment, however, is another matter that shall be addressed by this court when presented." Id.

Judge Thigpen's views and the essential holding of the majority in City of Auburn can be reconciled with one another in a manner that is also consistent with the language of the Act itself, the actual facts presented in City of Auburn, and the narrow question presented by City of Auburn, as framed by the majority in that case. Such a reconciliation is accomplished by simply understanding the "general rule" to be derived from City of Auburn as being that "the employer may not dictate to the employee that he may not have [a reasonably necessary] medical treatment recommended by [an] authorized, treating physician." See City of Auburn, 638 So.2d at 1341.
[8] The employee in Ex parte Wal-Mart had obtained a second Alabama physician under the four-physician-panel procedure of § 25-5-77(a); however, both the physician selected pursuant to that procedure and the initial treating physician, Dr. Klassen, recommended the same procedure. The question of which of these two physicians would perform that particular procedure was not discussed in Ex parte Wal-Mart.
[9] The Legislature expressly stated that one purpose of the Workers' Compensation Act, and the 1992 amendments, specifically, was to further "the provision of quality medical services to employees ... at a reasonable and fair cost to employers." Act No. 92-537, Ala. Acts 1992, § 1.
[10] The failure of the regulations to require exhaustion of the utilization-review procedures comports with the language of § 25-5-293(k). As noted, that provision makes the use of the above-described utilization-review procedures a precondition to an employer's right to refuse payment for a treatment based on a lack of medical necessity and, by logical extension, to seek a judicial declaration that its refusal in this regard is justified. Section 25-5-293(k), however, says nothing that abrogates an employee's rights under § 25-5-77(a) to seek judicial relief. An administrative regulation must be consistent with the statute pursuant to which it was promulgated; it cannot usurp legislative power, and may neither subvert nor enlarge upon statutory policy. E.g., Ex parte Jones Mfg. Co., 589 So.2d 208 (Ala.1991); Ex parte State Dep't of Human Res., 548 So.2d 176 (Ala.1988)(regulation must be consistent with the statute under which it is promulgated); Ex parte City of Florence, 417 So.2d 191 (Ala.1982) (administrative agency cannot usurp legislative powers or contravene statutes); Alabama State Milk Control Bd. v. Graham, 250 Ala. 49, 33 So.2d 11 (1947) (regulation cannot subvert or enlarge upon statutory policy). See also Terminate v. Pennsylvania Nat'l Ins. Co., 538 Pa. 60, 72, 645 A.2d 1287, 1293 (1994) (rejecting as inconsistent with the statute the implication that judicial review could not be obtained unless an employee first sought peer-review-organization (PRO) reconsideration when the regulation at issue merely stated that the employee could seek judicial relief after seeking PRO reconsideration).
[11] Under the 1992 Amendments to the Act, a "Workers' Compensation Medical Services Board" is given the duty to develop and implement guidelines for the provision of medical services and to "study, develop, and recommend... uniform medical criteria and policies for the conduct of utilization review, bill screenings, and medical necessity determinations." Ala.Code 1975, § 25-5-312(1). The Board has performed that task, however, and, in conjunction with the Director of Industrial Relations pursuant to Ala.Code 1975, § 25-5-293(k), has promulgated regulations as a result of those efforts. It is those regulations that are at issue. Neither the statute nor the regulations delegate to the Board the responsibility to act as an administrative agency to determine what medical treatments are reasonably necessary in a given case.
[12] The peer-review process under the Pennsylvania statute used the medical records submitted by the provider, just as does the administrative process herein at issue. See Ala. Admin. Code, r. 480-5-5-.07(5)(a) and (b)2. and (b)3.; 480-5-5-.23(1)(a)2. and (b).
[13] As discussed above, under Alabama's Workers' Compensation Act and the regulations at issue, an employer or insurer need not contract with a third party for utilization review, but can conduct that review itself, so long as the qualifications for the individual "reviewers" described in the regulations are satisfied.
[14] Section 41-22-3(1), Ala.Code 1975, a portion of the Alabama Administrative Procedures Act ("AAPA"), defines "agency" as a "board, bureau, commission, department, officer, or other administrative office or unit of the state." (Emphasis added.) Because utilization review is conducted by private entities and not a state agency, if the Legislature has intended to "detour" an employee from his right to judicial relief under § 25-5-77(a) by requiring exhaustion of the utilization-review process, it has done so without affording participants the protection of the "minimum procedural code [(the AAPA)] for the operation of all state agencies when they take action affecting the rights and duties of the public." Ala.Code 1975, § 41-22-2(a).
[15] Indeed, the only mandatory language appearing anywhere in the statute or the regulations that has any relation to this issue is the mandatory language in § 25-5-77(a) providing that "[a]ll cases of dispute as to the necessity... of the [medical] services shall be determined" by the circuit court having jurisdiction over the claim of the injured employee for compensation. Compare Ala.Code 1975, § 25-5-77(a) and § 25-5-77(i) (providing that "[a]ny party ... is entitled to a review by an ombudsman")with Miss.Code Ann., § 71-3-15(3) (2000) ("Any dispute over the amount charged for service rendered under the provisions of this chapter, or over the amount of reimbursement for services rendered shall be limited to and resolved between the provider and the employer or carrier in accordance with the fee dispute resolution procedures adopted by the [Mississippi Workers' Compensation Commission]."); see Walls v. Franklin Corp., 797 So.2d 973 (Miss.2001).
[16] As noted, the third-level peer-review process can take up to 30 days. Ala. Admin. Code. r. 480-5-5-.07(5)(b)1.;480-5-5.23(1)(a)3. A review by an ombudsman can take up to an additional 60 days. Ala. Admin. Code, r. 480-5-5-.23(1)(b)1.
[17] Alabama has similar procedure: Ala. Admin. Code, r. 480-5-5-.03, sets a 25-day deadline for payment of undisputed medical services.